NICK THOMPSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. A motion for a continuance was properly overruled, where the materiality of the evidence of the absent witness was not shown to the court.

2. A new trial will not be ordered because of error in the court below in overruling a challenge to the array of the jury put upon the defendant, when the ground of such challenge does not appear.

3. It was competent for the prosecution to prove that the deceased challenged the vote of the defendant on the morning of the day of the homicide, and that about an hour previous to the giving of the fatal wound, the witness heard the defendant say that "he be damned if he did not wish every white man was in hell."

4. Where there was no evidence of a mutual intention to fight, or that the defendant and the deceased did fight in pursuance of such intention, it was not error in the court to refuse to charge the law arising upon such hypothetical state of facts.

5. It was not error in the court to refuse to charge as follows: "If the killing, under the circumstances, was to prevent the committing of a serious bodily harm, or the eommission of a felony, the killing is justifiable." Such a request does not state the law correctly,

6. Where the evidence was conflicting, a new trial will not be ordered.

7. Where opprobious words were used by the defendant to the deceased, and the latter struck him with a small walking stick, the blow could not be considered as such considerable provocation as would rebut the presumption of malice on the part of the defendant in killing the deceased, provided the battery was not disproportioned to the insult offered.

Criminal law. Continuance. Challenge. Charge of Court. New trial. Opprobrious words. Manslaughter. Before Judge HANSELL. Brooks Superior Court. November Adjourned Term, 1874.

Thompson was tried for the murder of James H. Hunter, alleged to have been committed on October 7th, 1874. The case is fully reported in the decision.

JAMES ATKINS; W. C. McCALL, for plaintiff in error.

ROBERT G. MITCHELL, solicitor general; H. G. TURNER, for the state.

WARNER, Chief Justice.

The defendant was indicted for the offense of murder, and on the trial thereof the jury found him guilty. A motion was made for a new trial on the several grounds set forth therein, which was overruled by the court, and the defendant excepted.

1. There was no error in overruling defendant's motion for a continuance, inasmuch as the materiality of the testimony

of the absent witness was not shown to the court by the affidavit of the defendant or of any other person.

2. The court did not err in refusing to sustain the defendant's challenge to the array of the jury put upon him at the trial, inasmuch as it does not appear what was the ground of the challenge, whether it was a legal ground or otherwise.

3. There was no error in admitting the testimony of Pritchard that the deceased had challenged the vote of the defendant in the morning of the day the fatal wound was inflicted, and that about an hour previous thereto, he heard the defendant say "that he be damned if he didn't wish every white man was in hell." This evidence was *competent* in connection with the other evidence in the case as a circumstance tending to show malice on the part of the defendant towards the deceased, who was a white man.

4. The defendant requested the court to charge the jury: "If two parties, under a sudden heat of passion, form a mutual intention to *fight*, and do *fight*, and one of the parties kill the other, the killing is not murder, but manslaughter. If the killing, under the circumstances, was to prevent the committing of a serious bodily harm, or the commission of a felony, the killing is justifiable homicide." There was no error in refusing the first part of the request in relation to manslaughter, for the reason that it was not applicable to the facts of the case as disclosed by the evidence. There is no evidence in the record of any *mutual intention* of the deceased and defendant to *fight*, or that they did *fight* in pursuance of any such mutual intention, and if the court had given the request in charge it would have assumed to charge on a statement of facts not authorized by the evidence, and would have been error. Besides, there is nothing in the request as to the exclusion of all idea of deliberation or malice, either expressed or implied.

5. The latter part of the request, "if the killing, under the circumstances, was to prevent the committing of a serious bodily harm, or the commission of a felony, the killing is justifiable," was also properly refused, because it did not as-

sert the law correctly as applicable to the evidence in order to make out a case of *justifiable* homicide on the part of the defendant. Justifiable homicide is the killing of a human being in self-defense or in defense of habitation, or in defense of property, or in defense of *person*, against one who manifestly intends or endeavors, by violence or surprise, to commit a *felony* on either. A bare fear of any of those before named offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge: Code, sections 4330, 4331. The theory of the defendant's defense was that it was justifiable homicide, under the evidence, and if he had requested the court to charge the jury, that if they believed from the evidence that the deceased manifestly intended or endeavored, by violence or surprise, to commit a felony on *the person* of the defendant, and if from the circumstances disclosed by the evidence, they were sufficient to excite the fears of a reasonable man, and that the defendant really acted under the influence of those fears, and not in a spirit of revenge, then they might find the defendant not guilty. Such a charge as this, if it had been requested, should have been given, and doubtless would have been. The latter part of the charge requested omits to say anything about the defense of the defendant's *person* against the *manifest intention* and *endeavor* of the deceased, by *violence* or *surprise*, to commit a *felony* on *the person* of the defendant, and for that reason the request was properly refused. It is no error to refuse a request to charge, unless the charge requested is a *pertinent legal* charge: Code, section 3715.

6. The remaining ground of error assigned in the motion is, that the verdict of the jury was contrary to the evidence, and contrary to law. The evidence in the record is conflicting. The evidence of the witnesses on the part of the state is substantially as follows: that on the day of the election, the

defendant's vote had been challenged, one witness said by the deceased, another witness said by Wallace, but the defendant was allowed to vote, and after having voted; the defendant with others, was sitting on the curb of a pump in front of the court-house where the people were voting; deceased was going towards the court-house with a colored man, who was going to vote, and as they were passing the persons seated around the pump, some one called Wolf, an old colored man, who was going to vote, and had a conversation with him, in which he said he was going to vote the democratic ticket, and some of the colored people objected, when deceased said, any man had a right to vote as he pleased; defendant then said "it is a damned lie;" deceased then raised a small walking-stick in front of his face with both hands in the middle of the stick; when deceased raised his stick the defendant arose and deceased made three efforts to strike defendant. Holding the stick as before described, deceased fell back ten or fifteen feet, defendant pushing after him; defendant put his left hand on deceased shoulder and cut him with his knife, held in his right hand, in the left breast; as one of the witnesses states, made a "lunge at his left breast;" the blood came out of the wound as the knife was withdrawn; there were a large number of persons present at the time, and much confusion; deceased was a small, feeble man, weighing about one hundred or one hundred and fifteen pounds. One of the witnesses for the state says that deceased struck the defendant with his stick once, when defendant threw up his arm and parried the lick off, the deceased retreating all the time. The evidence for the defendant is in conflict with that of the witnesses for the state, in relation to the damned lie being given by defendant to deceased, that is to say, they did not hear the words spoken by defendant, but did hear him say to Wolf: "Old man, I have always been a friend to you, and if you go to the court-house and vote the democratic ticket our friendship is forever done;" that the deceased struck the defendant three times with his stick, and as he was about to strike the fourth time, the defendant cut him

with his knife. The evidence does not show that there were any wounds or bruises on the person of defendant.

7. The 4694th section of the Code declares that on the trial of an indictment for an assault, or an assault and battery, the defendant may give in evidence to the jury any opprobious words or abusive language used by the prosecutor, or person assaulted or beaten; and such words may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury. Assuming that the defendant did call the deceased a damned liar, and that the deceased did strike him, he would have been justifiable in doing so under the law, provided the battery was not disproportioned to the insult offered by the opprobious words. In view of that evidence under the statute, the striking the defendant by the deceased could not be considered as such "considerable provocation," under the law, as would rebut the presumption of malice on the part of the defendant in killing the deceased. If the court charged the jury correctly as to the law applicable to the evidence, and we are bound to assume that it did, as there is no exception taken to the charge in the record, we cannot say, as a reviewing court, that the verdict is either contrary to law or the evidence. In criminal cases, the jury are made the judges of the law, as given them in charge by the court, as well as of the facts. It is the peculiar province of the jury to judge of the credibility of witnesses when their evidence is conflicting, as in this case, and to believe those who, in their judgment, are entitled to most credit, taking into consideration the circumstances under which they testify, as well as the consistency and probable accuracy of their statements. In our judgment, there is sufficient evidence in the record to sustain the verdict, according to the repeated rulings of this court in similar cases.

Let the judgment of the court below be affirmed.