### 9581.  PHINAZEE *v:* THE STATE.

1. The exclusion of testimony of a witness for the State, that he had been "arrested about this same affair," was not, under the facts of this case, such harmful error as to require a new trial.

2. The instructions on circumstantial evidence, which were complained of as taking from the jury the right to apply the doctrine of reasonable doubt, were not erroneous, when considered with the remainder of the charge of the court.

3. The court did not err in giving in charge the rule laid down in section 1013 of the Penal Code (1910).

4, 5. The instruction on the law as to a confession, complained of in ground 6 of the motion for a new trial, was not error for the reasons assigned.  The other grounds relating to instructions of the court on confessions are incomplete, it being necessary to refer to other parts of the record to understand and pass upon them; and therefore they can not be considered.

6. Grounds of the motion for a new trial not argued in the brief of counsel for the plaintiff in error will be treated as abandoned.

7. The conviction of assault with intent to murder was authorized by the evidence.

DECIDED MAY 1, 1918.

Indictment for assault with intent to murder; from Spalding superior court—Judge Searcy.  February 11, 1918.

The plaintiff in error was found guilty of assault with intent to murder.  The evidence showed that officers went to raid a still.  When they arrived on the scene, about 8 o'clock at night, they watched the operations at the distillery for a while, and then ran towards the still and holloaed for the persons at the distillery to "hold up."  One of the party testified that as they ran towards the still a pistol-shot was made, and he then shot in the direction from which the blaze of the pistol came, and that there were three or four shots with a shotgun on his left.  He afterwards went back and found that the shots had hit within three feet from the place where he stood.  The first pistol-shot came so close to him that he felt the air in his face as it came by.  The sheriff testified that three people were shooting at them, and that the shots came from differ-

ent places; that one shot hit him in the jaw, and that the load of shot came with such force that it knocked him back, and three heavy loads came by him. The officers testified that there were four or more people at the still, and that one person that came by the officers was about the size of the defendant. They watched the persons at the still, but could not identify them, as they could only see them from their waists down. As the officers charged in the direction of the still the persons at the still ran off. One of the officers further testified that he saw defendant subsequently, and that his back from his neck down was full of shot; that they were gun shot, fine shot, number 9, the same that he used in his pump-gun, and that the defendant said that he (defendant) was shot at the still that night, and that the defendant told him they were making liquor there; that when the pistol-shot was first fired at the officers they commenced shooting; that one of the men at the still had a lantern; that as the officers ran towards the still they holloaed, "Hold up;" that they were about fifty or sixty feet from the still when they started to run towards it; that they had no warrants for these men; that no whisky had been run at the still that night; it was not quite hot enough. "They were looking after the beer and water."

Grant Reid, another witness for the State, testified that he saw the defendant that night, that the defendant came to his house about eight o'clock with a double-barrel shotgun, and that the distillery was about three quarters of a mile from his house; that the defendant, when asked how he was getting along, said, "Pretty bad," that he "got shot awhile ago mighty bad;" that he was in the swamp distilling, and "revenoos" ran upon them and told them to "hold up;" he (the defendant) said he had his gun behind a pine tree, and took it up and shot at them twice, and then turned and ran; that he didn't know how it was that he got shot when he turned and ran; that they shot him in the back; that he shot at them, but he didn't know whether he shot anybody or not; that he shot twice at the "revenoos."

The defendant, in his statement at the trial, said that Grant Reid, the State's witness, got him and one Mitchell to go over there to help him run off some liquor, and that on the night on which the still was raided he saw Reid there, and was at Reid's house afterwards; that they got to the still directly after dark set in,

and the stuff was wet, and directly after they got the fire started these persons came up; that they came tipping across there, and "about that time it looked like somebody started to run, and some one hollered to hold up," and he got up and commenced to move away; that he heard the shooting, but didn't know who shot; that he didn't shoot; that all he knew was that they were shooting him, and it looked like every shot hit him, and after the shooting was over he went on down in the swamp and across the field, over by Reid's house. He then related a conversation which he said took place between him and Reid, and explained why he left the community. He denied having done the shooting.

*J. W. Culpepper, J. A. Darsey, W. I. Heyward,* for plaintiff in error. *E. M. Owen, solicitor-general,* contra.

HARWELL, J. (After stating the foregoing facts.) 1. The first special ground of the motion for a new trial complains that the court erred in ruling out testimony of Grant Reid, a witness for the State, and the question in response to which it was given, as follows: "Q. Haven't you been arrested about this same affair? A. Yes, sir." This testimony, we think, was competent, and should have been admitted, as illustrating the witness's interest in the case. The court adds to this ground a note stating that "The defendant had the benefit that the admission of this testimony would have afforded, because his counsel was permitted to and did argue to the jury the weakness of the witness Reid's testimony, for the reason that Reid had been charged with this same crime, and was trying to clear himself by showing defendant's guilt." Under the facts thus shown we think that the exclusion of this testimony was not so prejudicial as to affect the verdict, and therefore was not such error as would afford reason for the grant of a new trial.

2. In the second special ground of the motion for a new trial the following excerpt from the charge of the court was complained of: "In cases founded upon direct or positive testimony the rule of reasonable doubt applies; but in cases founded upon indirect or circumstantial evidence, such as this case is, the law requires that the proven facts and circumstances shall not only be consistent with the guilt of the accused, but shall be inconsistent with his innocence, and must exclude every other reasonable hypothesis save that the accused is guilty. In this case the burden is on the

State to prove to your satisfaction, and to this extent, the guilt
of this accused, before you would be authorized to convict him."
We do not think that this excerpt from the charge is subject to
the criticism that it took away from the jury the right to apply
the doctrine of reasonable doubt. Immediately following this in-
struction the judge charged on the subject of reasonable doubt, and
in other portions of the charge he instructed the jury that if they
had a reasonable doubt of the defendant's guilt that they should
acquit him. The court in the charge excepted to was simply giv-
ing to the jury the rule applicable in cases founded upon circum-
stantial evidence, and instructed them that before they would be
authorized to convict the defendant, the evidence must come up to
that rule. We think therefore there is no merit in this ground
of the motion.

3. The third special ground of the motion complains of the fol-
lowing charge, taken from the Penal Code, § 1013: "The true rule
in criminal cases is not whether it be possible that the conclusion
at which the testimony points may be false, but whether there is
sufficient testimony to satisfy the minds of fair, impartial jurors
that the defendant is guilty as charged in the indictment beyond a
reasonable doubt." We do not think that this charge, when taken
in connection with the charge as a whole, is erroneous for the rea-
sons alleged,—that it excluded the defendant's statement from con-
sideration, and expressed an opinion that testimony pointed to his
guilt. The court charged fully and correctly the law as to the
statement of the accused. See *Early* v. *State,* 14 *Ga. App.* 467 (2),
469 (81 S. E. 385), and cit.

4. Ground 4 alleges that the judge erred "in charging the jury,
on pages 2 and 3 of his written charge, the law in regard to con-
fessions in criminal cases, for the reason that the alleged state-
ments made by the defendant to the witness Grant Reid were not
in the nature of a confession, but nothing more or less than incul-
patory admissions." Ground 5 alleges that the judge erred "in
charging the jury on page two and three of his written charge,
on the doctrine of confessions," etc. These grounds are not com-
plete and can not be considered. This court and the Supreme
Court have repeatedly held that the grounds of a motion for a
new trial must be complete within themselves, and can not be con-

sidered when it is necessary to refer to other portions of the record in order to understand them.

5. Ground 6 complains of the following charge: "If you find there was hope or fear, but if you find that the hope or fear originated in his own mind and was not induced or kindled by the acts, conduct, or words of another, and that, under the influence of the hope or fear so originated, defendant made the confession, this would not exclude the confession from evidence." We do not think this instruction is erroneous as being unwarranted by the evidence and inapplicable to the facts, or as expressing an opinion on the part of the court that a confession had been made. By reference to the court's charge it appears that the court submitted to the jury the question as to whether or not any confession had been made by the defendant, and charged the jury fully and fairly on this subject and in immediate connection with this excerpt.

6. In reference to the remaining grounds of the motion the brief of counsel for the plaintiff in error says merely: "We insist upon all of the assignments of error in the 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, and 18th grounds in the amendment to the motion for a new trial, for the reasons therein stated." Under repeated rulings of this court, these grounds, not being argued in the brief, will be treated as abandoned. *Barfield Music House* v. *Harris*, 20 *Ga. App.* 42 (2) (92 S. E. 402); *Agee* v. *Rhodes*, 20 *Ga. App.* 117 (92 S. E. 771).

7. The able counsel for the plaintiff in error insisted that the evidence did not authorize a conviction of assault with intent to murder, but at most authorized only a verdict of shooting at another. We can not agree with this contention. Some of the evidence is set out in the statement of facts, and, without going into a discussion of the question, we think that it will readily be seen that the evidence amply authorized the verdict. The defendant, according to his own statement, being engaged at the time in a violation of the law, and the offense being committed in the presence of the officers, it was not necessary that the officers have a warrant in order to make the arrest. The officers did not fire until they were fired upon, and then fired in the direction from which the pistol-shot came. The defendant, according to the testimony of Reid, fired twice with a shotgun, and these shots came, not from

the direction in which the officers were firing, but from their left; so under no view of the evidence was the defendant justifiable, and the verdict of assault with intent to murder was amply authorized by the evidence.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*