## ANDERSON *v.* THE STATE.

No. 14597. July 7, 1943. Rehearing denied July 19, 1943.

*Albert G. Ingram* and *William K. Miller,* for plaintiff in error.
*T. Grady Head, attorney-general, George Hains, solicitor-general,* and *Maud Saunders,* contra.

Grice, Justice. The grounds of the motion, which are dealt with seriatim in the headnotes, are without merit; and the propositions thus announced need not be further referred to. The entire charge of the court is in the record. It is full, fair, and accurate. It properly omitted any reference to the law of self-defense, in view of the candid statement of counsel for the accused. *Steed* v. *State,* 123 *Ga.* 569 (51 S. E. 627); *Cæsar* v. *State,* 127 *Ga.* 710 (57 S. E. 66); *Threlkeld* v. *State,* 128 *Ga.* 660 (58 S. E. 49); *Brown* v. *State,* 150 *Ga.* 756 (105 S. E. 289); *Minter* v. *State,* 158 *Ga.* 137 (123 S. E. 297); *Riggins* v. *State,* 169 *Ga.* 583 (151 S. E. 15).

Such a statement from able and experienced counsel not only did credit to the sense of duty which he owed to the court, as well as to his own enlightened conscience, but to his knowledge of the law as well; for under none of the evidence, or even the prisoner's statement, could it be said that the homicide was justifiable. The prisoner's account of the killing, although in material respects more favorable to him than that given by the testimony hereinafter referred to, was as follows: "Me and a boy named Chick Buddy was down there at the Two-State Café, arguing about money, and me and him was in there arguing, and Sis told me to go outside. I come on outside, me and a boy named Franklin, and was walking up there by the barber-shop, and this white lady and a white fellow come by, and he said, 'Mind how you cussing,' and I said, 'If I am cussing I done hushed.' I went to walk off, and this fellow grabbed me and knocked me down. I just gets up and hit him with the knife, and walked on off."

While there may be some slight conflicts in the evidence, the jury were fully authorized to find the following to be the truth of the case: The accused was in a restaurant, drunk and cursing, with an open knife in his hand. The proprietress ordered him out, and he left in company with another man. The two were standing on the outside "talking awful stuff." Wilson and his wife, after having left a church service and a brief visit to a relative, stopped by a café on their way home. As they left the place and were passing by the accused and his companion, Wilson asked the accused to hush. The accused continued to "cuss." Wilson again asked him to desist until he could get his wife by. He did not hush, but used vulgar and obscene language which is unfit to print. The words were of a most obscene character. As was observed in Chaplinsky v. New Hampshire, 315 U. S. 568, 573 (62 Sup. Ct. 766, 86 L. ed. 1031): "The English language has a number of words and expressions which by general consent are 'fighting words,' when said without a disarming smile. . . Such words, as ordinary men know, are likely to cause a fight. So are threatening, profane, or obscene revilings." When the language just referred to was uttered, immediately (as one witness put it) Wilson "kinder shoved him and was fixing to hit him, and when he did [the accused] raised his hand that way," and in a moment or so Wilson was seen to fall. Another witness, after detailing about his presence in the restaurant

where he had pulled his knife on Chick Buddy, said: "He then walked up the street a little piece, and he stopped. I seed him after he walked out of the café. He walked out the café, and he walked up the street a little piece and stopped, and was there cussing, and a man was passing by with his wife, and he told him to mind his word, and he kept cussing, and the man again asked him, and he never would stop, and the man slapped at him, and Eddie knocked his [Wilson's] hand up; he [Eddie] stabbed him with the knife." Wilson, who was a crippled man weighing 112 pounds, died from the stab. The evidence fully authorized the jury to find the accused guilty of murder, and as a whole it did not demand that the grade of the homicide be reduced to voluntary manslaughter.

There is no obligation which a lawyer owes to his client which would justify him in trifling with the court; none which makes it his duty to urge a proposition of law which he knows to be unsound. One of the special duties of attorneys is "never to seek to mislead the judges or juries by any artifice or false statement of the law." Code, § 9-601. They are officers of court, priests in the temple of justice, whose high mission is to assist in the administration of justice under the law. The same considerations which should restrain them from obstructing it by filing motions for new trial when there is no reason for supposing that a new trial will be granted, or to indulge in other dilatory tactics for the sole purpose of delaying the administration of justice (*Fambles* v. *State,* 97 *Ga.* 625, 629, 25 S. E. 365), make it commendable in counsel to assist the judge in clarifying and simplifying the issues which should be submitted to the jury. A study of this record convinces us that he gave away no right of his client, nor did any injury to his cause in frankly stating to the court that he did not take the position that the defense of justifiable homicide was involved. In *Lingo* v. *State,* 29 *Ga.* 470, may be found the statement that that which is perfectly justifiable on the part of the deceased can not be any legal provocation to the slayer. See *Mathews* v. *State,* 125 *Ga.* 50 (54 S. E. 196). In *McMillan* v. *State,* 35 *Ga.* 54, 59, this court said: "But even if there had been an assault shown, was the assault such as to free the defendant from the crime of murder? Roscoe's Cr. Ev. 726, says: 'Although, under circumstances, an assault by the deceased upon the prisoner may be sufficient to rebut the general presumption of malice arising from the killing, yet it must not be

understood that every trivial provocation which, in point of law, amounts to an assault, or even a blow, will, as a matter of course, reduce the crime to manslaughter. For when the punishment inflicted for a slight transgression of any sort is outrageous in its nature, either in the manner or continuance of it, and beyond all proportion to the offense, it is rather to be considered as the effect of a diabolical malignity than a human frailty, and is one of the symptoms of that which the law denominates malice, and the crime will amount to murder, notwithstanding such provocation.' 'Barbarity,' says Lord Holt (Keat's Case, Comb. 408), 'will often make malice.' 1 East. P. C. 234; 1 Russ. by Grea. 515 (1). If, without adequate provocation, a person strikes another with a deadly weapon likely to produce death, although he had no previous malice against the party, yet he is to be presumed to have had such malice at the moment, from the circumstances, and he is guilty of murder.' 1 Rus. on Cr. 514."

In *Thompson* v. *State*, 55 *Ga.* 47, it was ruled: "Where opprobrious words were used by the defendant to the deceased, and the latter struck him with a small walking-stick; the blow could not be considered as such considerable provocation as would rebut the presumption of malice on the part of the defendant in killing the deceased, provided the battery was not disproportioned to the insult offered." See *Hanye* v. *State*, 99 *Ga.* 212 (25 S. E. 307) ; *Slocumb* v. *State*, 157 *Ga.* 131 (7) (121 S. E. 116). This court once more rules that in order to convict one of murder it is not necessary to make it expressly appear that the slayer had a motive, or to show threats or ill will, or that the act was done to avenge a past wrong, real or imaginary; but on the contrary, that while malice is a necessary ingredient of murder, express malice is not; and (Code, § 26-1004) "Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart." The law does not declare that malice shall be implied only when no provocation appears. The phrase is, "where no considerable provocation appears." The grade of an unlawful killing of a human being is that of murder if it be done with malice, either express or implied. "Though some other courts lay down a different rule, it is now a well established rule in this State, that, where a killing of a human being is proved and the evidence adduced to establish the killing does not show circum-

stances of justification or alleviation, malice will be inferred." *Green* v. *State,* 124 *Ga.* 343, 347-8 (52 S. E. 431).

Nor is the verdict wrong for the reason that, although the indictment charges that James Wilson was murdered, the person killed was referred to in the testimony as James Henry Wilson, or merely "Mr. Wilson." It was not shown that there were two James Wilsons. The law does not regard the middle name or initial of a person as material unless it be shown that there are two persons of the same first name and surname. *Hicks* v. *Riley,* 83 *Ga.* 332 (9 S. E. 771). See *Timberlake* v. *State,* 100 *Ga.* 66· (27 S. E. 158) ; *Eaves* v. *State,* 113 *Ga.* 749 (39 S. E. 318) ; *Veal* v. *State,* 116 *Ga.* 589 (42 S. E. 705).

The verdict was supported by the ·evidence, and it was not erroneous to refuse a new trial.

*Judgment affirmed. All the Justices concur.*