1. The record being silent as to any assault upon the person killing, or any attempt by the person killed to commit a serious personal injury on the person killing, or any other equivalent circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice, or that the killing was the result of that sudden, violent impulse of passion supposed to be irresistible, it was not error to fail to charge the law of voluntary manslaughter. Code, § 26-1007.
2. The court did not err in refusing a timely written request to charge the Code, § 38-121, as to the need of corroboration when the only witness is an accomplice, since the testimony of a single witness who was present when a homicide was committed, but who did not in any way participate therein, but for a time thereafter concealed the fact, is sufficient without other evidence to authorize a conviction. Lowery v. State, 72 Ga. 649.
3. It was not erroneous to instruct the jury concerning alibi as a defense, since it was recited in the ground of the motion complaining that such an instruction was given, "he [the accused] contending by his statement and evidence that he was not with Johnny Pollard [the deceased] at the time he was killed." Westbrook v. State, 91 Ga. 11 (16 S.E. 100).
4. The court charged the jury the Code definition of murder, and instructed them that there were two kinds of malice, implied and express, and that "express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof." That the court added to the language quoted. "such as preparation to kill, lying in wait, old grudges, previous difficulties, and such other like external circumstances as are capable of proof," immediately thereafter defining also the term implied malice, affords no cause for reversal in view of the issue before the jury and the evidence before them.
5. The fifth and sixth grounds of the motion for new trial, set forth in the statement of facts, do not disclose error, since it does not appear therefrom that the court refused to permit counsel for the accused to prove any material fact, as distinguished from a conclusion or opinion. The only ruling of the trial court, in the first instance, was that the witness could not state his mere conclusion as to whether a person at the time inquired about could operate a car on a dirt road without a light; and in the second instance, related to an opinion of the witness *Page 612 
as to when a tire print or track was made, the court's ruling thereon being, "He can describe it, but his opinion as to how long it had been there, I sustain the objection." In neither case was any fact testified to by the witness as the basis of any opinion, nor was any ruling made, forbidding the witness to testify to any such fact, or to be interrogated with respect thereto.
6. The insistence that a new trial should be granted because a co-defendant, jointly indicted with the accused, was tried and acquitted, is without merit.
7. Nothing in the special grounds requiring the grant of a new trial, and although the evidence was in sharp conflict, the jury as the triors of fact having resolved that conflict by finding the accused guilty, and their verdict being supported by competent evidence and having had the approval of the trial judge, the judgment refusing a new trial is affirmed.
Judgment affirmed. All the Justices concur.
 No. 14847. MAY 4, 1944.
The defendant was convicted in Carroll County, Georgia, of the murder of John Pollard. The evidence for the State was to the effect that the defendant went to a roadhouse together with Bill Stacey, who was jointly indicted with him, and Russell Marlow in an automobile; that Bill Stacey was driving the car, Russell Marlow was on the front seat with him, and Matt Cooper, the defendant, was in the back seat; that the defendant and Stacey got out of the automobile, went into an amusement place, drank beer with Pollard, and that all three came out together, Pollard and Cooper getting in on the back seat, Stacey driving, and Marlow being on the front seat, drunk and apparently unconscious; that Stacey drove the car for some distance, stopped, got out, and walked down the road, and while he was gone, the defendant Cooper shot Pollard four times, killing him instantly; that later, Stacey came back, got in the car, drove for a distance, and Stacey and Cooper took the body out of the car and placed it beside the road. There was no evidence of any difficulty between Pollard and Cooper at the time, or near that time. There was no evidence that Marlow had any part whatsoever in the murder.
The defendant entered a plea of not guilty, denied the killing, and denied that he was even at the scene of the killing. He offered evidence to show that Pollard was not in the car with the witness and Cooper on the occasion testified to by Marlow, the State's witness, and that the latter's testimony was untrue, and *Page 613 
offered other evidence to show that the State's witness swore falsely; and there was likewise evidence tending to corroborate him.
The evidence authorized the conclusion that the deceased died in the early morning hours of December 26, 1942, as the result of wounds from a pistol.
For the State, Russell Marlow testified in effect that on the night of December 25, he, together with Matt Cooper, Bill Stacey, and John Pollard, were in an automobile, the witness and Stacey on the front seat, and the other two on the rear seat. After detailing where they went from one place to another, this witness told about the car stopping and what then happened, as follows: When the car stopped, Stacey got out and seemed to be messing with the light of the car. While he was out of the car, Matt Cooper shot Pollard four times with what seemed to be a Smith 
Wesson pistol. Cooper didn't say anything, and Pollard didn't say anything. When these four shots were fired, Bill Stacey was around at the front of the car. Just after the shots were fired, Stacey came back and got in the car, cranked up and drove off. Marlow also testified that when they got on the Villa Rica road and crossed the first concrete bridge and went up a hill, Stacey driving, they turned to the right on a little road and put Pollard out there; that Bill Stacey and Matt Cooper took Pollard out of the car and laid him on the bank, four or five feet off the pavement; that nothing was said by anybody in the car; and that Marlow was sitting on the front seat, but did not put his hands on Pollard.
Mrs. Elbert McCormack, a witness for the State, testified: That on the evening of December 25, after visiting what she described as a "honkatonk," Cooper came in the private dining room where she and her husband were and said he would take her home, to which she replied that they had a way to get home. Cooper persisted, to the point of using profanity, that he was going to take her home, and she as vehemently said he was not. At this time Pollard, whom this witness had never known before, came in the room and patted Cooper on the shoulder and said, "Old boy, you don't remember me, do you?" to which Cooper replied, "Sure I remember you, you cut me out yonder at the prison. I will get even with you before midnight tonight." The witness further swore: "Pollard didn't offer any effort to strike Cooper then. There wasn't any trouble between the two men there at that time." *Page 614 
The defendant's statement was as follows: "On the 25th day of December, Bill Stacey come down to Will Edgeworth's fishing camp about five o'clock in the afternoon. Mr. Edgeworth and Marlow was not there. Bill asked me did I have any whiskey. I says, `Yes, some here.' Went down and took a drink. Bill stayed around there until about ten o'clock that night. We decided we would go to the H. H. So Bill, Marlow, and myself got in the car and went to the H. H. While we were there I saw Johnny Pollard. Did not have a fuss with him no kind of way and never have. I walked up and spoke to Johnny Pollard and shook hands with him. He asked me what I was doing. I told him I was working at Will Edgeworth's fish camp. He talked to me a few minutes, never had no fuss no way at all, and Bill told me to let's go. Bill, myself, and Marlow got in the car and went to Mr. Springer's and stayed over there around three hours. I was up all night Christmas Eve night and all day Christmas and I was full of liquor and sleepy. I went out and got in the car and lay down and went to sleep. In a few minutes Bill brought Marlow out and Marlow lay down on the front seat. I was asleep and Marlow was asleep and I didn't know when they run off the side of the fill. I do know when we got back to the fish camp about six o'clock in the morning. Bill waked me up and I asked him what time it was. He said about six o'clock. All three of us got out of the car, and went down and got in the same bed, — all three of us. Got up about ten o'clock. I got up and set up a few minutes, and I went back to bed and stayed there until Sunday, — in the room until Sunday. I got up Sunday, and Mr. Edgeworth told me he heard over the radio somebody killed Pollard. I says, `I hate it, I knew Johnny Pollard and always liked him.' I never had a thing in the world against him. He didn't threaten me and I had no reason in the world to have anything against him. Marlow, the only thing I can say is he told this tale trying to get himself out of jail. So far as John Pollard and myself having a minute's trouble, we never had. That is all I have got to say."
The jury found the defendant guilty with a recommendation. He filed a motion for new trial on the general grounds that the verdict was contrary to law and contrary to the evidence, which he afterwards amended by adding seven special grounds. The first of these was a complaint that the judge failed to charge the law of *Page 615 
voluntary manslaughter. The second was based on the refusal of a written request to charge the Code, § 38-121, as to the testimony of an accomplice. The third was an insistence that the judge charged the law of alibi; this ground of the motion containing the statement that "the defendant did not set up an alibi as a defense, he contending by his statement and evidence that he was not with Johnny Pollard, the deceased, at the time he was killed, and did not kill him, and that Johnny Pollard was not with him at the time he was killed." The fourth ground complains of the following charge: "Express malice is that deliberate intention to unlawfully take away the life of a fellow-creature, which is manifested by external circumstances capable of proof. Such as preparation to kill, lying in wait, old grudges, previous difficulties, and such other like external circumstances as are capable of proof." The fifth ground states as its basis the following: "Because the court erred in the trial of said case and during the trial of the same in refusing to allow counsel for the defendant to prove by J. C. Sprayberry, witness for the State, on cross-examination, as follows: (Q) `What do you say whether or not that night, at the time you went home, whether a fellow could drive a car, operate a car on the highway or dirt road without a light?' Mr. Meadors: [Attorney for the State] `I object to that as a conclusion of the witness. He can state the facts.' The Court: `Yes, I think so.' Mr. Smith: [Attorney for the defendant] `On cross-examination I expect to show it was dark and foggy and in his opinion a person could not operate a car on the highway without lights.' The Court: `State the facts and the jury pass upon that.'"
The sixth ground complains of the following occurrence during the examination of a witness: "Because the court erred in the trial of said case and during the trial of the same in refusing to allow counsel for the defendant to prove on cross-examination of Stewart Martin, undertaker, and witness for the State that the automobile tracks found on the shoulder of the road at the point where the body was found were fresh tracks. The following occurred: Mr. Meadors: (Q) `When was that tire print made there, do you know?' (A) `No, sir.' (Recross-examination by Mr. Smith): (Q) `What would be your opinion?' Mr. Meadors (Attorney for the State): `I object to that. He can describe it to the jury.' Mr. Smith: `I want to show by him the track was a fresh *Page 616 
track made a little time before.' The Court: `He can describe it but his opinion as to how long it had been there, I sustain the objection.' Mr. Smith: `I want to show by him it had the appearance of being a fresh track and in his opinion it had been made a very short time.' Movant contends that the court committed error which was harmful and prejudicial in refusing to allow the defendant to show by the State's witness on cross-examination that the tire track on the shoulder of the road on a damp, rainy night, at the point where the body was found, had the appearance of being a fresh track, and in his opinion it had been made a very short time, for the reason that it was on cross-examination, and a non-expert witness can always give his opinion after giving facts upon which to base his opinion; he being among the first arriving at the point where the body was found."
The seventh ground is a contention that a new trial should be granted to the defendant because Bill Stacey, who was jointly indicted with him for the crime of murder, and who under the evidence would have been equally guilty, was subsequently tried and acquitted by a jury.
The motion for new trial as amended was overruled, and the movant excepted.