EDMONDS *v.* THE STATE.

No. 15442.   JUNE 7, 1946.   REHEARING DENIED JULY 16, 1946.

112

*Robert B. Short,* for plaintiff in error.

*Eugene Cook, Attorney-General, M. E. O'Neal, Solicitor-General,* and *C. E. Gregory Jr., Assistant Attorney-General,* contra.

BELL, Chief Justice. 1. In special ground ■ error was assigned on the following charge: "When testimony in the nature of alleged confessions is offered, it is for the jury to determine whether or not such alleged confession was, in point of fact, made or not, and if you believe there was a confession, then and in that event, the following principles of law would govern you in determining the weight of such testimony with reference to an alleged confession. All admissions should be scanned with care and confessions of guilt should be received with great caution. A confession alone, uncorroborated by other evidence, will not justify a conviction. To make a confession admissible, it must have been made freely and voluntarily, without being induced by another, by the slightest hope of benefit or the remotest fear of injury. If the jury should believe that a confession was made, but that it was induced by another by the slightest hope of benefit or the remotest fear of injury, then and in that event, it would be your duty to disregard that testimony.

"In order, however, for the hope of benefit or fear of injury, if any, to render a confession, if any, inadmissible, such hope of benefit or fear of injury must be induced by another. If you find there was hope or fear, yet if you find the hope or fear originated in the party's own mind from seeds of his own planting without being induced by another, and under the influence of a hope or fear thus originated, the defendant made a confession, this will not exclude the confession, if any, as evidence. The hope or fear that excludes is that, and that only, which some other person kindles or excites."

Several assignments of error were made on this charge, but the only contention urged with respect thereto in this court is that the evidence did not authorize a charge on the law as to confessions, because the statement of the defendant as introduced in evidence was at most only an incriminatory admission.

"Statements made by a defendant charged with murder, that he did the killing charged because of certain facts which, if true, furnished no legal excuse or justification therefor, amount to a confession." *Jones* v. *State,* 130 *Ga.* 274 (4) (60 S. E. 840); *Jones* v. *State,* 139 *Ga.* 104 (3) (76 S. E. 748); *McCloud* v. *State,* 166 *Ga.* 436(2b) (143 S. E. 558); *Coates* v. *State,* 192 *Ga.* 130 (1), 134 (15 S. E. 2d, 240); *Hixson* v. *State,* 194 *Ga.* 568 (3) (22 S. E. 2d, 121); *Wright* v. *State,* 199 *Ga.* 576 (4) (34 S. E. 2d, 879). In the statement signed by the defendant the next day after the tragedy, he admitted the killing, and the only reason given by him was "that I was drunk and lost my head because my wife was arguing with me." Voluntary drunkenness is no excuse for crime. Code, § 26-403. Nor did the fact that the defendant's wife was arguing with him justify or mitigate his act in killing her. Accordingly, there is no merit in the contention that the evidence did not authorize a charge on the subject of confessions. The case differs on its facts from *Allen* v. *State,* 187 *Ga.* 178 (3) (200 S. E. 109, 120 A. L. R. 495), in which the accused admitted only that he struck the deceased, and not that he had killed her.

In special ground 2, error was assigned separately on the following part of the foregoing charge: "In order, however, for the hope of benefit or fear of injury, if any, to render a confession, if any, inadmissible, such hope of benefit or fear of injury must be induced by another. If you find there was hope or fear, yet if you find the hope or fear originated in the party's own mind from seeds of his own planting without being induced by another, and under the influence of hope or fear thus originated, the defendant made a confession, this will not exclude the confession, if any, as evidence. The hope or fear that excludes is that, and that only, which some other person kindles or excites."

The movant averred that this charge was not authorized by the evidence or his statement; that it assumed, without evidence, that "such confession, if any, was generated in the mind of defendant from seeds of his own planting," and was a direct expression of

opinion that a confession had been made, and was brought about by some hope or fear originating in the defendant's own mind from seeds of his own planting; and that it was misleading and confusing.

There is no merit in this ground. The Code, § 38-411, declares that, "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." The excerpt here complained of merely explained this section as related to hope or fear, and was in the abstract a correct statement of law. *Hill* v. *State*, 148 *Ga.* 521 (4) (97 S. E. 442). The section itself had already been given in charge, and properly so under the evidence. *Denson* v. *State*, 150 *Ga.* 618 (2) (104 S. E. 780); *Fairfield* v. *State*, 155 *Ga.* 660 (7) (118 S. E. 395); *McLemore* v. *State*, 181 *Ga.* 462 (1) (182 S. E. 618, 102 A. L. R. 634); *Phinazee* v. *State*, 22 *Ga. App.* 258 (5) (95 S. E. 878). It necessarily follows that the explanation was, in like manner, authorized by the evidence. Nor was the charge erroneous, as insisted, on the ground that it was confusing and misleading.

Under the rulings made above, there was no merit in special grounds 3 and 4, assigning error separately on the last two sentences of the excerpt quoted above from special ground 2.

■ In special ground 5, error was assigned on the following charge: "Gentlemen, the court charges you that voluntary drunkenness is no excuse for crime. The fact that one accused of crime was drunk at the time of the alleged crime may be shown as illustrative of his motive in the transaction, but one voluntarily drunk is presumed to intend the legitimate consequences of his act, and the question is whether he intended to do the act and not whether he intended the consequences of the act. If a drunken man is sufficiently intelligent to know, understand, and intend to do a certain act, and to understand that a certain consequence is likely to result from it, and does the act, he is criminally liable."

Several assignments of error were made on this charge, one being that there was nothing to show that the defendant was drunk at the time of the homicide. While several witnesses testified in effect that they were in the presence of the defendant only a short time before the killing and he appeared to be entirely sober, there was other evidence as to drunkenness: Jimmie Edmonds testified:

"My mother asked my father to go to the store, at Pretoria. My father was sober when he left home. My mother told him not to drink any, and he went on down there and when he came back he brought a half pint of white whisky. . . My mother was fussing with my father about drinking liquor." In the defendant's signed statement, he said, "I went to the store and got some sugar and while I was there, I drank some wine. . . I bought a half pint of shine whisky. I drank some out of the bottle. In fact, I drank about half of the bottle. I went on home, and my wife began to argue with me because I was drinking. . . I got up off the front porch and went into the house. She stayed out there and kept on fussing. While I was in there I took another drink of whisky. . . The only reason I can give for killing my wife is that I was drunk and lost my head because she was arguing with me." The sheriff testified, "His appearance on the date of the shooting was that he was under the influence of intoxicating liquors." According to the deputy sheriff, "He was under the influence of some intoxicating beverage. He did not make any statement that evening as to his having drunk anything, but you could smell it." So, it can not be held that the charge on drunkenness was unauthorized, as insisted.

Nor was the charge subject to the criticisms, that it tended to mislead the jury into believing the defendant was relying on drunkenness as a defense, and that, having been given immediately following instructions on insanity, it was prejudicial to that defense, and influenced the jury to withhold a recommendation of life imprisonment. *Dickens* v. *State,* 137 *Ga.* 523 (5) (73 S. E. 826); *Daniel* v. *State,* 171 *Ga.* 335 (2) (155 S. E. 478). Nothing to the contrary was ruled in *Martin* v. *State,* 193 *Ga.* 824 (2), 831 (20 S. E. 2d, 266). It follows that there is no merit in ground 5.

■ Special ground 6 assigned error on the following charge: "Preparation for the act of killing, lying in wait, previous difficulties, old grudges, threats to kill, and matters of that character may be some of the evidence tending to show express malice."

The movant alleged that this charge was not authorized by the evidence or his statement, and that it was highly prejudicial because of the peculiar nature of the only defense made by him, to wit, insanity, which plea within itself excludes all idea of malice.

In *Wilson* v. *State,* 33 *Ga.* 207 (3), it was held: "Where, in charging the jury, the court correctly states the law governing the

case, but exception is taken to an illustration used by the court explanatory of a legal principle, this court will not narrowly scrutinize the illustration if satisfied that, whether right or wrong, it was not calculated to mislead and did not in fact mislead the jury." In *Hamilton* v. *State,* 169 *Ga.* 613 (151 S. E. 17), it appeared that the killing occurred as the result of a sudden quarrel "over a few words." The court, after charging the Code definition of malice, stated to the jury, "as, for instance, a case of malice would be where a man arms himself and waylays to take the life of another." It was held that the charge did not constitute reversible error. See also *Benton* v. *State,* 185 *Ga.* 254, 255 (1) (194 S. E. 166) ; *Adams* v. *State,* 188 *Ga.* 668 (2) (4 S. E. 2d, 663) ; *Cooper* v. *State,* 197 *Ga.* 611 (4) (30 S. E. 2d, 177).

The judge charged fully on insanity as a defense, and the instruction complained of in this ground was not prejudicial to such defense. There is no merit in ground 6.

Grounds 7 and 8 were similar to ground 6, and are controlled by the ruling just made.

■ In special ground 9, error was assigned on the following charge : "An abandoned and malignant heart, in the sense of the law, is commonly held to be evidenced by a weapon or other appliance likely to produce death, and by the brutal and bloodthirsty use of such instrumentality." The judge had just given in charge the section of the Code on implied malice, and was here continuing his instruction on that subject.

The charge complained of did not contain an intimation or expression of opinion as to any issue of fact, nor did it deprive the defendant of his defense of insanity, as contended. *Goosby* v. *State,* 153 *Ga.* 496 (5) (112 S. E. 467).

■ In special ground 10, error was assigned on the failure of the judge, without request, to give in charge Code, §§ 26-1006 and 26-1007, defining manslaughter and voluntary manslaughter. It is contended that such a charge was demanded by the following testimony of Jimmie Edmonds : "Before that he had been twisting her arm. She was asking him not to twist her arm. She told me to get the brush and hit him and I got the brush and hit him. He did not quit twisting her arm and I hit him another gain and he quit. "Q. How long was it after your father twisted your mother's arm before your father shot her? A. About three minutes."

The witness further testified: "The last thing my mother said to my father before he shot her she called him an ugly name."

"That which is perfectly justifiable on the part of the deceased can not be any legal provocation to the slayer." *Lingo* v. *State,* 29 *Ga.* 470 (4); *Mathews* v. *State,* 125 *Ga.* 50 (1) (54 S. E. 196); *Slocumb* v. *State,* 157 *Ga.* 131 (7) (121 S. E. 116). "The killing of a human being, even in the heat of passion is murder, if the slayer have no just cause for his anger." *Smith* v. *State,* 49 *Ga.* 482.

According to the evidence, the deceased did not call the defendant an "ugly name" until after he had desisted from twisting her arm. Nor was there other evidence tending to show that his act of twisting her arm was justified. It thus appears without dispute that the deceased was entirely justified in calling upon the boy to aid her, and, accordingly, no issue as to voluntary manslaughter was involved. *Thompson* v. *State,* 55 *Ga.* 47 (7); *Hanye* v. *State,* 99 *Ga.* 212 (2) (25 S. E. 307); *Slocumb* v. *State,* 157 *Ga.* 131 (7) (supra); *Anderson* v. *State,* 196 *Ga.* 468, 471-472 (26 S. E. 2d, 755).

Under the facts appearing, the Code, § 26-1409, referring to opprobrious words or abusive language as possible justification for a mere assault or assault and battery, has no bearing upon the case; there being nothing to show that the deceased used any such language toward the defendant until after the assault and battery (twisting arm) had ended.

■ In special ground 11, error was assigned on the refusal of the court to admit in evidence a document purporting to be a certified copy of "report of physical examination" contained in files of Baker County selective service or "draft board," and stating that the defendant was disqualified for military service because of "simple adult mal. adjustment." The document as offered concluded with the following certificate:

"Georgia, Baker County.

"I, Lilliam Jackson Timmons, do hereby certify that I am the duly appointed and qualified clerk of the Selective Service Board of Baker County, Georgia. I further certify that the paper hereto attached and made a part hereof is a true and correct copy of the physical examination and induction report showing the reasons why Luke Randolph Edmonds was rejected by the armed forces. I further certify that the original is of file in my office.

"Given under my hand and seal this 24th day of September, 1945.

"Lilliam Jackson Timmons (L. S.)"

The following objections were made by the solicitor-general: "Objects to what purports to be a certified copy of a physical examination of Luke Edmonds, on the ground that the doctor himself would be the proper way to show whatever they are undertaking to show. The fact that this man was rejected for military service would not show that he was crazy."

It is insisted for the plaintiff in error that the objections so interposed were invalid, and that the document was relevant and admissible as evidence of an official report or statement made in line of duty and contained in a public record. As to the admissibility of this general type of evidence, counsel for the plaintiff in error cites a number of cases, among them: *O'Connor* v. *United States,* 11 *Ga. App.* 246 (1) (75 S. E. 110) ; *Kinney* v. *Avery & Co.,* 14 *Ga. App.* 180, 183 (80 S. E. 663) ; *Smith* v. *Savannah Electric Co.,* 25 *Ga. App.* 59 (4) (102 S. E. 548) ; *McMillan* v. *Savannah Guano Co.,* 133 *Ga.* 760 (3) (66 S. E. 943) ; *Sewell* v. *Tallapoosa,* 145 *Ga.* 19 (3) (88 S. E. 577). More particularly, he. cites and relies upon a Canadian case, Casey *v.* Kennedy (1920) 48 N. B. 85 (52 D. L. R. 326), holding that a medical-history sheet purporting to be the result of an examination of the plaintiff by a board connected with a medical military-service tribunal and claimed to be relevant to one of the issues, the action being one for assault and battery, was admissible in evidence as a public document, over the objection that it was hearsay; and holding further that, since this was the only objection urged, other possible grounds of objection relating to genuineness of the document were waived, especially as the plaintiff had requested the privilege of proving genuineness, which request the court thought it unnecessary to comply with. Quoted in 16 A. L. R. 247, case note. In the brief filed by the Law Department, attention is called to two cases holding that such evidence is hearsay and inadmissible. Laird *v.* Boston & Maine Railroad, 80 N. H. 58 (114 Atl. 275, 16 A. L. R. 243) ; Commercial Standard Insurance Co. *v.* Noack (Tex. Civ. App.), 45 S. W. 2d, 798. Seemingly, these three cases, and an English case, also cited in the A. L. R. note, are the only reported cases relating to the particular class of evidence, to wit, records of selective serv-

ice boards. At least, no others have been cited, and we have found none.

It is further insisted for the State that the records and files of a local draft board, especially in view of their partially confidential character under presently applicable regulations, do not constitute public records within the meaning of the rule invoked by the plaintiff in error. Selective Service Regulations, 1942-1943, 605.31, 605.32, 605.36; Evanston v. Gunn, 99 U. S. 660 (25 L. ed. 306); Fritz v. Metropolitan Life Insurance Co., 50 Cal. App. 2d, 570 (123 Pac. 2d, 622). Compare 5 Wigmore on Evidence (3d, ed. 1940), 524, 525, § 1634. It is insisted also that the evidence was properly rejected because the certificate was not authenticated by the official seal of any Federal agency or department, but that in any event the ruling rejecting this evidence should be affirmed for the reason that it did not tend to show insanity.

There is no statute in this State bearing upon the admissibility of such evidence, other than those sections of the Code declaring, in mere general terms, certain common-law principles based on the best-evidence rule. Code, §§ 38-202, 38-204, 38-211. There is a general statute relating to the certificate or attestation of any public officer, either of this State or of any county thereof, but clearly this will not apply to the certificate of a Federal officer or employee. § 38-601. The full faith and credit statutes, both Federal and State, apply only to State records and proceedings. Moreover, aside from the full faith and credit clause of the Constitution, Congress would have no power to prescribe rules of evidence for State courts. Code, §§ 1-401, 38-627, 38-630; 28 U. S. C. A., §§ 687, 688; Small v. Slocumb, 112. Ga. 279 (3) (37 S. E. 481, 53 L. R. A. 130, 81 Am. St. R. 50). Thus, while there is another Federal statute providing that copies of books, records, or documents in any of the executive departments, "authenticated under the seals of such departments, respectively, shall be admitted in evidence equally with the originals thereof," this statute, as such, would not apply as a rule of evidence in a State court, although an authentication in the manner described might be accepted by a State court as being sufficient under common-law principles. 28 U. S. C. A., § 661.

From what has been said, it is clear that the admissibility of the evidence that was offered and rejected in the trial court must be determined on common-law principles but, as we view the case, a

decision upon only one of the several points mentioned will be necessary.

Regardless of all other questions, we do not think that the certified copy was sufficiently authenticated to make it admissible. In the recent edition of Wigmore on Evidence, it is stated: "Authentication of a Certified Copy. Suppose the law, in a given case, clearly to permit of a certified copy; it remains for the offeror to establish that the paper offered by him is indeed the certified copy allowed by the law—in short, to *authenticate* it. For example, let it be settled that a custodian's certified copy is admissible, and let the public document whose contents are to be proved to be an order of survey by the county commissioners of highways; and let a paper be offered purporting to be a certified copy, by J. S. the county clerk, of the original warrant lawfully in his custody. Here it still remains to be ascertained that the county clerk is in fact the lawful custodian of that class of documents, that the person J. S. is in fact the county clerk, and that the signature of J. S. was in truth placed there by the genuine J. S. (or, if there is a seal, that the seal was genuinely his seal placed there by him).

"These three elements are necessarily involved in the admission of the paper offered—the *authority* of the county clerk, the *incumbency* of J. S. as clerk, and the *genuineness* of the signature or seal. The establishment of these three elements is commonly spoken of as Authentication. Perhaps they may be assumed without evidence; or perhaps slight evidence will suffice, or perhaps definite kinds of evidence may be formally prescribed; but their establishment in some manner is inevitable. These elements are logically involved in the offer of evidence. Doubtless many who meet in practice the formalities of authentication, and do not attempt to analyze the principles involved, are apt to regard them as merely encrusted traditions or obnoxious technicalities having no reason for existence. But it is not so. Whatever the variety of mode or the seeming technicality of detail, these rules exist because there is an inherent element of fact that must somehow be met and disposed of." 5 Wigmore on Evidence (3d ed., 1940) 760, § 1679.

The author then goes on to discuss various methods by which such evidence may be authenticated, including judicial notice, official seals, and second official certificates.

Assuming that in this case the court might have taken judicial

cognizance of the regulations, and that they would have shown that the clerk of a local board would have authority to issue and deliver a certified copy of such a record, yet, since there was no proof whatever as to the incumbency of the particular person in such position or as to the genuineness of the signature, it was not error to reject the evidence. In People v. Reese, 258 N. Y. 89 (179 N. E. 305, 79 A. L. R. 1329), it was held that a certificate signed by one describing himself as an officer of another State, without attestation by anyone as to his official character, the genuineness of his signature, and the regularity of his certificate, was not so authenticated as to be admissible in evidence. In the opinion, delivered by Chief Justice Cardozo, it was said: "There is nothing in this record to inform us whether the person whose name is affixed to the certificate is the incumbent of such an office. There is nothing to inform us (if he is the incumbent) whether his signature is genuine. Authentication is not merely defective. It is lacking altogether." The decision was manifestly based on common-law principles, and the result can not be different here because the certificate purported to have been made by the clerk of a Federal agency or board, rather than by a person describing himself as an officer or functionary of another State. See also Wigmore on Evidence (3d ed., 1940), §§ 1630, 1633, 1674, 1675a, 1677, 1680, 2161, 2169, 2576; 20 Am. Jur. 98, § 77, 834, 836, §§ 987-989; 32 C. J. S. 533, § 666; 5 L. R. A. (N. S.) 938, case note.

It is true that the solicitor-general objected to the evidence upon other grounds, and it does not affirmatively appear for what particular reason the judge excluded it. However, it is the rule in this State that, whether the objections urged to the admission of evidence be valid or invalid, a judgment excluding it will be affirmed if it was inadmissible for any reason. Steed v. Cruise, 70 Ga. 168 (4); Smith v. Page, 72 Ga. 539 (2a); Brunswick & Birmingham R. Co. v. Hoodenpyle, 129 Ga. 174 (6) (58 S. E. 705); Heaton v. Hayes, 188 Ga. 632, 633 (2c) (4 S. E. 2d, 570). See also, in this connection, Morgan County Bank v. Poullain, 157 Ga. 423 (4) (121 S. E. 813, 33 A. L. R. 592). The Canada case, relied on by counsel for the plaintiff in error, ruled differently, but as shown above, it appeared in that case that the party offering the evidence also asked the privilege of supplying proof as to genuineness; and in the opinion as to this point, it was said finally: "I think, under

**132**

the circumstances, the objection should be limited to the ground taken at the trial." Any way, the point is controlled by our own decisions, and we can not do otherwise than affirm the judgment excluding the proffered document. See Code, § 70-203.

In this view, it is unnecessary to deal with other questions relating to the admissibility of this evidence, and we express no opinion thereon.

■ The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*