## 18936

The STATE, Respondent, v. Malvin E. NORRIS, Appellant

(168 S. E. (2d) 564)

*Messrs. Thomas C. Brissey* and *Louis G. Sullivan,* of Greenville, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Emmet H. Clair,* and *Robert H. Hood, Assistant Attorneys General,* of Columbia, and *B. O. Thomason, Jr., Solicitor,* of Greenville, *for Respondent,*

July 2, 1969.

Moss, Chief Justice.

The appellant, Malvin E. Norris, was tried at the 1966 December Term of the Court of General Sessions for Greenville County on an indictment charging him with the murder of one Clyde Ledbetter on August 25, 1966, which trial resulted in a conviction of murder, with a recommendation to mercy, and he was sentenced to life imprisonment.

At the trial the appellant was represented by retained counsel and this appeal is prosecuted by appointed counsel. No evidence was presented by the appellant. Following the verdict of the jury convicting the appellant of murder with a recommendation to mercy, he did not make a motion for a new trial. However, he did file timely notice of intention to appeal to this court from the conviction and sentence.

The appellant alleges that the trial judge committed error in the trial of his case in the following particulars: (1) in failing to submit to the jury the offense of manslaughter when such was requested by defense counsel; (2) in admitting into evidence pictures of Freddie Ledbetter, a principal witness for the State, and of her clothing and garments, over the objection of the appellant; and (3) in allowing Freddie Ledbetter to testify concerning the physical condition of the deceased.

The first question to be determined is whether the trial judge erred in failing to submit to the jury the offense of manslaughter. The rule is well established in this jurisdiction that on a trial for murder growing out of the use of a deadly weapon, it is unnecessary to charge the law relating to manslaughter where the testimony fails to suggest any theory upon which a verdict of manslaughter could rest. It is equally well settled that to warrant the court in eliminating the offense of manslaughter it should very clearly appear that there is no evidence whatever tending to reduce the crime from murder to manslaughter. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130.

Voluntary manslaughter is usually defined as the unlawful killing of a human being in sudden heat of passion upon a sufficient legal provocation. *State v. Gardner,* 219 S. C. 97, 64 S. E. (2d) 130.

In *State v. Davis,* 50 S. C. 405, 27 S. E. 905, the court said that:

"It may be concluded, therefore, that 'the sudden heat and passion, upon sufficient legal provocation,' which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence. * * *"

In determining whether the act which caused death was impelled by heat of passion or by malice, all the surrounding circumstances and conditions are to be taken into consideration, including previous relations and conditions connected with the tragedy, as well as those existing at the time of the killing. While there is some evidence that appellant was in a fit of passion or frenzy at the time of the homicide, the question is whether there is any evidence tending to show that such passion was engendered by a sufficient legal provocation.

It is undisputed that Clyde Ledbetter died as a result of three bullet wounds inflicted by the appellant. The physician who performed an autopsy upon the dead body of Clyde Ledbetter testified that the chest wound or the wound in the mouth and neck could have caused his death.

Freddie Ledbetter, the daughter of the deceased, Clyde Ledbetter, testified in behalf of the State and admitted that she was living with the appellant without the benefit of matrimony. The witness and the appellant operated a small grocery store on the Easley Bridge Road, in the City of Greenville. This store was closed at about 11:30 P. M. on the night of August 25, 1966. At the time of the closing, the appellant, Clyde Ledbetter, and Hawk Rigdon were present. All of them had been drinking to some extent. The witness had in her possession the days' receipts from the store and entered her car for the purpose of going home with the appellant. The appellant followed the witness out to the car and demanded that she give him $50.00 of the money. An argument ensued between them when she refused to comply with his demand, on the ground that "he would just probably take it, get drunk and blow it in." After the witness had entered her car, the appellant slapped her and then pulled out a pistol and shot through the open door. The bullet passed by the witness and into the windshield of the car. Following the firing of the pistol, the witness attempted to get out of the car and scratched the appellant across the face and at that time he hit her with the butt of the gun across the forehead, breaking the skin and causing her to bleed. During the attack upon her the appellant told the witness "Damn you, I wish I could kill you but I can't." Her explanation was that he couldn't kill her because he loved her.

This witness testified that as she was attempting to get out of the car, on the driver's side, Hawk Rigdon came up and told the appellant "don't do that," or something to that effect. She further testified that the appellant was standing at the open car door and Clyde Ledbetter, now deceased, came up behind the appellant and "grabbed him in the

shoulder" with his left hand. At that time Hawk Rigdon said to the appellant "look out" and to the deceased "don't do that." Then Rigdon grabbed Clyde and shoved him over to the side and the appellant turned and shot him.

Hawk Rigdon was called as a witness by the State. He testified that the appellant left the store and went out to the car in which Freddie Ledbetter was sitting. He said that the two started fighting and she "was hollering like somebody was killin' her." The witness said he went to the car, put his left hand on appellant's right shoulder and said, "Malvin, stop that." While this was going on Clyde Ledbetter walked up in front of the witness, about two or three feet distant from the appellant, and Hawk said, "Clyde, I'll get them separated," and about that time one shot was fired and in one or two seconds two or three more shots were fired. Clyde then staggered and fell up against the back end of the car, rolled around and fell flat on his back behind it. Hawk went to Clyde and then came back to where the appellant was and told him that "Clyde's been shot," to which the appellant replied, "You want some if it? Do you want me to shoot you, too?" This witnes also testified that Clyde was unarmed and said not a word to the appellant nor did he put his hand on him. This witness stated that he didn't see the appellant do the shooting but the shots came from the car and the pistol would have been on the far side from where he was standing.

The officer who investigated the killing testified that when he arrived at the grocery store where the killing took place, the appellant was standing there with two pistols in his hand. This officer asked the appellant what happened and his reply was, "I shot the son of a bitch" and the officer saw a man lying behind the car. The officer described Freddie as being in a state of "hysterics", she was bloody and her clothes were half torn off her and she was quite upset. He said there were marks and bruises on both sides of her neck, one of her earlobes was swollen and also the bridge of her nose and her mouth.

There was testimony that the ambulance attendant searched the body of Clyde Ledbetter and found an unopened knife in Clyde's right front pocket and a screw driver in his right rear pocket. There was also testimony from one of the officers that the appellant said, concerning Clyde, "He is trying to cut me with his knife. If you don't believe me, he's got it in his hand, look and see." This officer checked the deceased's hands and found nothing in either.

It is obvious from this record that Freddie Ledbetter was the victim of a violent and unjustified assault at the hands of the appellant because of her refusal to give him the sum of money he demanded. Her failure to comply with his request did not justify the assault he made upon her; she, therefore, had a right to defend herself against such assault.

The rule in this State is that a father has the right to defend his daughter from death or receiving serious bodily harm at the hands of a person who makes a malicious and unprovoked assault upon her. The right of the father to defend his daughter is coextensive with the right of the daughter to defend herself. *State v. Cook,* 78 S. C. 253, 59 S. E. 862, 15 L. R. A., N. S., 1013; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A L. R. 1133; *State v. Hewitt,* 205 S. C. 207, 31 S. E. (2d) 257.

The law does not reduce from murder to manslaughter every homicide committed in the heat of passion; it must be passion justly excited by legal provocation. *State v. Smith,* 10 Rich. 341. If an adequate legal provocation does not exist, the killing, even in the heat of passion is murder and not manslaughter. Assuming, as the appellant contends, that the deceased grabbed him by the shoulder, under the facts revealed by this record, such was not a sufficient legal provocation which would reduce the homicide from murder to manslaughter. When the deceased found that his daughter was in danger of death or receiving serious bodily harm as a result of the felonious assault made upon her by the appellant, in going to her defense the father

was exercising his legal right in protecting his endangered daughter.

The exercise of a legal right, no matter how offiensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence. This rule was succinctly stated in the case of *Edmons v. State*, 201 Ga. 108, 39 S. E. (2d) 24, as follows:

" 'That which is perfectly justifiable on the part of the deceased, can not be any legal provocation to, the slayer.' *Lingo v. State*, 29 Ga. 470(4) ; *Matthews v. State*, 125 Ga. 50(1), 54 S. E. 196; *Slocumb v. State*, 157 Ga. 131(7), 121 S. E. 116. 'The killing of a human being, even in the heat of passion is murder, if the slayer have no just cause for his anger.' *Smith v. State*, 49 Ga. 482."

It is our conclusion, under the facts of this case and the rule of law above cited, that the trial judge was correct in not submitting to the jury the offense of manslaughter.

The appellant charges the court with error in admitting into evidence pictures of Freddie Ledbetter showing the injury on her face and the condition of her clothing upon the ground that the witness had stated that all of the injuries shown were not caused and occasioned by the attack made on her by the appellant, but some were inflicted by one of the investigating officers.

Freddie Ledbetter pointed out on the photograph the injury to her forehead inflicted by the appellant. She also pointed out other bruises about her face with the statement that the appellant didn't cause all of such but that a deputy had hit her across the eye and in the mouth with a blackjack. The witness identified the blood stains on her clothing, stating that part of it came from the blows inflicted upon her by the appellant, by an officer, and some from her bleeding father. Freddie admitted that she was very much upset following the shooting of her father by the appellant and that the officer had trouble in getting her into the police car. The officer testified that when he saw this witness at the

scene of the shooting she was hysterical, running back and forth, talking and cursing. He asked her to sit down in the police car but instead she grabbed him and almost knocked him down and at that time he "cuffed her" with his hand. The officer denied that he broke the skin or in any way injured her.

The determination of the relevancy and materiality of a photograph must be left to the sound discretion of the trial judge. *State v. Edwards,* 194 S. C. 410, 10 S. E. (2d) 587; *State v. Jones,* 228 S. C. 484, 91 S. E. (2d) 1; and *State v. Thorne,* 239 S. C. 164, 121 S. E. (2d) 623. In view of the testimony we have heretofore recited, it is our opinion that the trial judge did not abuse his discretion in admitting the photographs as being relevant.

After the admission into evidence of the photographs 13, 14 and following their publication to the jury, trial counsel for the appellant objected to the pictures upon the further ground that they were calculated to inflame the jury. The trial judge overruled the objection on the ground that it came too late because the pictures had already been admitted into evidence and published to the jury. The objection by the appellant that the photographs were prejudicial or inflammatory should have been interposed when they were offered in evidence. *State v. Cooper,* 212 S. C. 61, 46 S. E. (2d) 545. Accordingly, the objection of the appellant upon the stated ground came too late because it was made after the objectionable evidence had been admitted. In addition to what we have said there is nothing in this record from which it can be concluded that the photographs were inflammatory or calculated to arouse the prejudice of the jury.

The third question was whether the trial judge erred in allowing Freddie Ledbetter to testify concerning the physical condition of the deceased. We do not consider this question because such was abandoned when the case was orally argued before this court.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

Lewis, Bussey, Brailsford and Littlejohn, JJ., concur.