Malvin E. NORRIS, Petitioner,

v.

STATE OF SOUTH CAROLINA, COUN-
TY OF GREENVILLE, et al.,
Respondents.

Civ. A. No. 68–959.

United States District Court,
D. South Carolina,
Columbia Division.

March 10, 1970.

Edward A. Harter, Jr., Director, Le-
gal Aid Service Agency, Columbia, S. C.,
and Henry M. Herlong, Jr., Columbia, S.
C., for petitioner.

Emmet H. Clair, Asst. Atty. Gen., for the State of South Carolina, Columbia, S. C., for respondents.

HEMPHILL, District Judge.

Reacting to an unfavorable appeal from a conviction for murder, Petitioner asks this court for a Writ of Habeas Corpus.

Petitioner's difficulties arise out of an altercation which took place on August 25, 1965. The factual circumstances of the occurrence and the differences in the witnesses' testimony are fully discussed by the Supreme Court of South Carolina in State v. Norris, 168 S.E.2d 564, filed July 2, 1969, which has been made a part of this record by Respondent's return, and agreed as constituting a part of the record by counsel in briefs. Counsel for Petitioner declined to offer additional testimony at the hearing in this forum and elected to stand upon the facts as the South Carolina Supreme Court found them to be. Accordingly, no dispute of fact is projected here. A summary factual discussion is given below to facilitate understanding of the issues.

At the time of the fatal shooting Petitioner and his common-law wife were operating a small grocery store in Greenville, S. C. At closing time Petitioner's wife took the day's receipts and went to a car. Petitioner followed her and demanded the money which she refused. A fight ensued between Petitioner and his wife during which Petitioner brandished a revolver and fired a shot into the car in which she was seated. While the fight was in progress, or shortly after it had ended, the wife's father, Clyde Ledbetter, came upon the scene; Petitioner shot and killed him. There is conflict in the testimony as to whether the deceased made physical contact with Petitioner.

At trial Petitioner's counsel requested the court to charge voluntary man-

slaughter, which the trial judge refused. The South Carolina Supreme Court upheld the trial judge stating, " * * * under the facts of this case and the rule of law above cited * * * the trial judge was correct in not submitting to the jury the offense of manslaughter." [1]

The South Carolina legislature has never undertaken to define manslaughter, thus the courts of the state rely upon the common law and manslaughter is a common law offense. State v. Barnett, 218 S.C. 415, 63 S.E.2d 57 (1951). In its opinion in State v. Norris, the court said, "[V]oluntary manslaughter is usually defined as the unlawful killing of a human being in the sudden heat of passion upon a sufficient legal provocation," citing State v. Gardner, 219 S.C. 97, 64 S.E.2d 130 (1954). On the facts produced in trial the Supreme Court found an absence of "sufficient legal provocation", an essential element of the offense.

South Carolina holds that slight physical aggression is sufficient provocation to reduce a homicide to manslaughter, State v. Gallman, 79 S.C. 229, 60 S.E. 682 (1908). The court here determined that rule to be inapplicable. In explanation of the governing principles, the court said,

The law does not reduce from murder to manslaughter every homicide committed in the heat of passion; it must be passion justly excited by legal provocation. State v. Smith, 10 Rich. 341. If an adequate legal provocation does not exist, the killing, even in the heat of passion is murder and not manslaughter. Assuming, as the appellant contends, that the deceased grabbed him by the shoulder, under the facts revealed by this record, such was not a sufficient legal provocation which would reduce the homicide from murder to manslaughter. When the deceased found that his daughter was in danger of death or receiving seri-

[1]. "It is our conclusion, under the facts of this case and the rule of law above cited, that the trial judge was correct in not submitting to the jury the offense of manslaughter."

ous bodily harm as a result of the felonious assault made upon her by the appellant, in going to her defense the father was exercising his legal right in protecting his endangered daughter.

In the *Norris* (supra) opinion, South Carolina, adopting the ruling in Edmonds v. State, 201 Ga. 108, 39 S.E.2d 24 (1946) stated:

> The exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence.
>
> \*   \*   \*   \*   \*   \*
>
> That which is perfectly justifiable on the part of the deceased, can not be any legal provocation to the slayer. Lingo v. State, 29 Ga. 470(4).

In determining that there was no "sufficient legal provocation" for the homicide, Petitioner contends that the trial judge and the South Carolina Supreme Court usurped the function of the jury and in so doing abridged the Due Process Clause of the Fourteenth Amendment by denying Petitioner the right to that trial by jury, guaranteed by the Sixth and Fourteenth Amendments. Petitioner contends that by ruling as a matter of law that the elements of manslaughter were absent the court answered at least three factual questions: (1) At the time the deceased reached the scene was his daughter *being* attacked by the Petitioner? (2) When the deceased reached the scene did he believe it was necessary to intervene with force in order to save his daughter? (3) Was the deceased justified in saying nothing and intervening forcefully?

■■ There appears to be ample authority for the general proposition that on questions of substantive law the federal courts are bound by those determinations made by the highest court of a state as to what constitutes that state's substantive law on a particular point. Federal courts are similarly bound by the state court's construction of a statute. This principle is especially applicable when, as here, there are no federal statutes on the subject and moreover, the South Carolina Supreme Court's determination of what are the necessary elements of manslaughter is in no way determinative of a federal question. In such a case the federal courts are bound by state statutory or common law, unless the state law is unconstitutional. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938); Henry v. Miss., 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Memphis & Chas. Ry. v. Pace, 282 U.S. 241, 51 S.Ct. 108, 75 L.Ed. 315, 72 A.L.R. 1096. Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana, 332 U.S. 495, 68 S.Ct. 167, 92 L.Ed. 99 (1947); State of La. ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1946); Hebert v. La., 272 U.S. 312, 47 S.Ct. 103, 71 L. Ed. 270, 48 A.L.R. 1102; Olson v. Tahash, 344 F.2d 139 (8th Cir. 1965); Crab Orchard Imp. Co. v. Chesapeake & Ohio Ry., 115 F.2d 277, cert. den. 312 U.S. 702, 61 S.Ct. 807, 85 L.Ed. 1135 (4th Cir. 1940); Mounts v. Boles, 326 F.2d 186 (4th Cir. 1963). A federal court hearing a habeas corpus petition has been bound by state court interpretation of a state statute requiring a defendant to be duly cautioned of the effect of his answers; the statute nevertheless was void in that petitioner was denied due process because he was not informed of his right to remain silent, et cetera; Fleenor v. Hammond, 116 F. 2d 982, 132 A.L.R. 1241 (6th Cir. 1941).[2] A right gratuitously granted cannot be revoked without due process of law; City of Albertville v. United States Fidelity & Guaranty Co., 272 F.

2. "[T]he rule announced in United States v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138, [is] that the due and orderly administration of justice in a state court is not to be interfered with by the courts of the United States, save in rare cases where exceptional circumstances of peculiar urgency are shown to exist \* \* \*."

2d 594, 84 A.L.R.2d 1 (5th Cir. 1959); Poulson v. Turner, 359 F.2d 588 (10th Cir. 1966) cert. den. 385 U.S. 905, 87 S. Ct. 219, 17 L.Ed.2d 136.

■ It is also well settled that habeas corpus proceedings are not intended to provide an additional appeal and is generally not supposed to provide collateral review of matters involving trial errors, unless constitutional rights are at issue. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, 785; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, 860; Smith v. United States, 88 U. S.App.D.C. 80, 187 F.2d 192 (1950) cert. den. 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358; Daniels v. Allen, 192 F.2d 763 (4th Cir. 1951) aff'd 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; 344 U.S. 443, 73 S.Ct. 437, 97 L.Ed. 649; Walker v. Bishop, 408 F.2d 1378 (8th Cir. 1969); Nance v. Baker, 400 F.2d 864 (10th Cir. 1968); Chavez v. Baker, 399 F.2d 943 (10th Cir. 1968) cert. den. 394 U.S. 950, 89 S.Ct. 1289, 22 L.Ed.2d 485.

Indisputably, then, the federal courts are bound by the common law and statutory interpretations of the highest court of a state as to what the law of that state is. In the area of criminal law, such a pronouncement by the highest court of the state is binding, and unless unconstitutional, the decisions of the respective states' courts of last resort are conclusive. As the United States Supreme Court, speaking through Justice Frankfurter, so wisely stated: (discussing the scope of federal review of state criminal proceedings)

In our federal system the administration of criminal justice is predominantly committed to the care of the States. The power to define crimes belongs to Congress only as an appropriate means of carrying into execution its limited grant of legislative powers. U.S.Const. Art. 1, § 8, cl. 18. Broadly speaking, crimes in the United States are what the laws of the individual States make them, subject to the limitations of Art. 1, § 10, cl. 1, in the original Constitution, prohibiting bills of attainder and ex post facto laws, and of the Thirteenth and Fourteenth Amendments.

These limitations, in the main, concern not restrictions upon the power of the States to define crime, except in the restricted area where federal authority has pre-empted the field, but restrictions upon the manner in which the States may enforce their penal codes. Accordingly, in reviewing a State criminal conviction under a claim of right guaranteed by the Due Process Clause of the Fourteenth Amendment, from which is derived the most far-reaching and most frequent federal basis of challenging State criminal justice, 'we must be deeply mindful of the responsibilities of the States for the enforcement of criminal laws, and exercise with due humility our merely negative function in subjecting convictions from state courts to the very narrow scrutiny which the Due Process Clause of the Fourteenth Amendment authorizes.' Malinski v. People of State of New York, 324 U.S. 401, 412, 418, 65 S.Ct. 781, 89 L.Ed. 1029, [1036, 1040]. Due process of law, 'itself a historical product,' Jackman v. Rosenbaum Co., 260 U.S. 22, 31, 43 S.Ct. 9, 67 L.Ed. 107, (112), is not to be turned into a destructive dogma against the States in the administration of their systems of criminal justice.

Rochin v. California, 342 U.S. 165, 72 S. Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396 (1952).

■ In those cases upon which Petitioner relies the courts recognize that if there is no evidence to support a verdict on a lesser included offense, that the offense need not be charged.[3] The South

---

3. It should be noted that the cases relied upon by petitioner wherein error was found in the refusal to charge a lesser included offense are federal cases. The federal appellate courts have jurisdiction to decide whether district courts have committed error of substantive law, but in reversing state court convictions, diminution of constitutional rights resulting from state substantive law must be shown.

Carolina Supreme Court has ruled that, under the circumstances of this case, the deceased, Clyde Ledbetter, had the right to act in the manner in which he acted, and, therefore, legal provocation, an essential element of the offense of manslaughter, was absent. Such a ruling represents substantive state law which this court is without authority to alter.

Attention is also called to Poulson v. Turner, supra. In that case defendant was convicted of murder. Although there were admittedly mitigating circumstances upon which the jury could fix a lesser, included offense, a charge on the lesser offense was neither requested nor given. The Court of Appeals ruled that failure to charge the lesser offense was not error sufficient to support a Writ of Habeas Corpus. In reaching its conclusion the court noted, "Under our system, the administration of criminal justice is generally committed to the several states. Constitutional provisions are restrictions only upon the manner in which the states may enforce their penal codes. * * * In the enforcement of their criminal laws, states have comprehensive rights in fashioning their own rules." [Citations omitted.] Similar sentiments were echoed by the Court of Appeals of the Fourth Circuit in Daniels v. Allen, 192 F.2d 763 (1961), affirmed Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

The United States Fourth Circuit Court of Appeals has consistently recognized the states' responsibilities in this area and the scope of federal review of state criminal proceedings. In Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir. 1960), petitioners, having been convicted of rape, petitioned for writ of habeas, complaining, among other things, of evidentiary rulings made by the trial judge, insufficiency of the evidence to support one verdict, and the instructions to the jury. The court, speaking through Judge Sobeloff, ruled:

The points made in the present proceeding all pertain to state law, and in the context of the trial we find no indication of fundamental unfairness. We express no opinion as to the state court's resolution of the issues raised. Even if we were to disagree, we could not intervene by habeas corpus, when the alleged errors are of a character that cannot reasonably be said to involve a deprivation of constitutional rights. Normally, the admissiblity of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.

Similarly, in Kearney v. Peyton, 360 F.2d 589 (4th Cir. 1966), the court upheld the conviction of defendant for unlawfully wounding a police officer. Although defendant testified that he acted only after an unprovoked attack by the police officer, no instruction was given on self-defense. The court ruled the error "did not sufficiently infect the trial so as to make it fundamentally unfair, in violation of the Constitution, thus allowing the remedy of habeas corpus." Moreover, the court again noted "normally * * * the sufficiency of * * * instructions * * * are matters of state law and procedure not involving federal constitutional issues", citing *Grundler*, supra. In accord is Gemmel v. Buchkoe, 358 F.2d 338 (6th Cir. 1966), cert. den. 385 U.S. 962, 87 S. Ct. 402, 17 L.Ed. 306.

This court, mindful of the limited function of federal review of state criminal proceedings[4] and the well established principles that matters of substantive state law and procedure are largely committed to the states, must decide whether Petitioner's trial was infected with such "fundamental unfairness" as to be violative of Due Process.

4. Rochin, supra; Poulson, supra; Grundler, supra; Kearney, supra.

■ In *Grundler*, the Fourth Circuit recognized the familiar principle, that only a conviction totally devoid of evidentiary support raises a Due Process issue.[5] The converse of that proposition, would seem to be that when there is evidentiary support for the jury's verdict, then a Due Process issue is not present and, consequently, a question of constitutional proportions does not arise. Following *Grundler*, the Fourth Circuit considered Faust v. North Carolina, 307 F.2d 869 (1962). There, during the course of an altercation, Petitioner shot and killed a police officer. The jury returned a verdict of first degree murder without a recommendation of "mercy" and, as required by North Carolina law, Petitioner was given the mandatory death sentences. It does not appear what charges the jury was given, but, in his petition for a Writ of Habeas Corpus, Petitioner complained that the elements of deliberation and premeditation were absent. Indeed, the court noted that the Assistant Attorney General candidly admitted to some misgivings as to the elements of premeditation and deliberation in the case. The court stated, "Certainly it cannot be denied that all of the evidence showed that Appellant acted passionately and quickly." The Fourth Circuit declined to inquire into the propriety of the verdict and the correctness of the North Carolina Supreme Court's opinion upholding the conviction. The court noted, "The North Carolina Supreme Court * * * concluded that passion does not always reduce the crime * * *." In reaching its conclusion that the state's disposition of the matter was not reviewable by way of habeas corpus the court reasoned:

> We express no opinion as to the state court's resolution of these questions. Even if we were to disagree,

we could not intervene by habeas corpus when the alleged error is of a character that cannot reasonably be said to involve a deprivation of constitutional rights. Normally the sufficiency of evidence and instructions to juries in state trials are matters of state law not involving federal constitutional issues. As Chief Judge Sobeloff said in Grundler v. State of North Carolina, 4 Cir., 283 F.2d 798, 802; "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.

The question presented is a question of the state law of homicide, and however difficult it may be to resolve in terms of logic, it is a matter for state determination. In the context of the trial we find no indication of fundamental unfairness.

Appellant argues that this case is governed by Thompson v. City of Louisville, 1960, 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 and Garner v. Louisiana, 368 U.S. 157, 82 S. Ct. 248, 7 L.Ed.2d 207. In these cases the Supreme Court held it a denial of due process for a state to convict someone upon *no evidence of guilt.* * * * [Emphasis added.]

There is a difference between a conviction based upon evidence deemed insufficient as a matter of state criminal law and one so totally devoid of evidentiary support as to raise a due process issue. *It is only in the latter situation that there has been a violation of the Fourteenth Amendment, affording the state prisoner a remedy in a federal court on a writ of habeas corpus.* [Emphasis added.] Grundler

5. The principle was stated in Thompson v. City of Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960); "Just as 'conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." See also Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed. 176 (1965); Garner v. La., 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); Barr v. City of Columbia, 378 U.S. 146, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964).

v. State of North Carolina, 4 Cir., 283 F.2d 798, 801 (1960).

In the instant case Petitioner does not contest the sufficiency of the evidence upon which to base a murder conviction. He merely contends that he was denied due process by the refusal to charge manslaughter. Under the applicable cases, whether the elements of manslaughter are present is a question of state law upon which the Supreme Court of South Carolina has spoken and this court, bound by that determination, cannot pass. As noted above, a Due Process question does not arise unless Petitioner's conviction was without evidentiary support. Here, there was ample evidence to sustain Petitioner's conviction and therefore an absence of such fundamental unfairness as would raise a constitutional question.

Petitioner has not been denied Due Process. There exists no elements of unfairness in his trial. The petition is refused. The case is dismissed.

And it is so ordered.