706 S.E.2d 12

The STATE, Petitioner,

v.

David Dwight SMITH, Respondent.

No. 26926.

Supreme Court of South Carolina.

Heard Jan. 21, 2010.

Decided Feb. 7, 2011.

410

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for Petitioner.

Senior Appellate Defender Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice KITTREDGE.

David Dwight Smith shot and killed Robert Finley in a failed drug deal. The trial court charged the jury on the law of murder and self-defense, but refused to charge voluntary manslaughter, involuntary manslaughter, or accident. The jury convicted Smith of murder and possession of a firearm during the commission of a violent crime.[1] The court of appeals held Smith was entitled to a voluntary manslaughter charge and reversed his convictions. The court of appeals declined to address whether Smith was entitled to an involuntary manslaughter or accident charge. We granted the State's petition for a writ of certiorari. We reverse and reinstate Smith's convictions and sentence.

## I.

In the early morning hours of January 12, 1997, Robert Finley (Victim) called Angie Smith's home looking for crack cocaine. Angie contacted David Dwight Smith, a known drug dealer. Angie knew Smith and knew Smith had previously sold crack cocaine to Victim. Victim owed Smith $40 from their most recent drug transaction.

When Smith and Angie arrived at the trailer, Smith sent Angie inside to facilitate the drug deal. Angie returned to the car and informed Smith that Victim wanted to deal directly with Smith. Smith grabbed a gun from under the seat, exited the car, and entered the trailer.

At trial, Angie estimated Smith was inside for approximately two minutes. The trailer door opened, and Angie saw Smith and Victim engaged in a scuffle and "falling out the door." Angie testified she heard a pop and saw Victim's body fall to the ground. Smith then got into the car and told her "you don't know nothing, you don't see nothing," and they drove away.

Smith's testimony regarding the events leading up to his arrival at the trailer mirrored Angie's. Regarding the en-

---

1. This was Smith's second trial on the charges. The convictions and sentences from his first trial were vacated on post-conviction relief.

counter with Victim inside the trailer, Smith testified as follows: Victim wanted $50 worth of crack cocaine. Smith placed the drugs on the counter for inspection. Victim informed Smith he had no money, but he would pay him the next day. Smith refused to again give Victim drugs on credit. Victim responded that he was taking the drugs anyway and approached Smith with a "real serious demeanor." At this point, Smith pulled his gun and pointed it at Victim, who was unarmed. Victim continued to approach Smith, stating "what are you gonna do, shoot me, give me the gun, I'll shoot myself." Victim grabbed Smith, trying to knock the gun out of Smith's hand. Smith struck Victim in the face with the gun. As the two men were struggling near the entrance to trailer, the "the gun went off."

## II.

The trial court charged the jury on the law of murder and self-defense. The trial court refused to charge voluntary manslaughter because it found no evidence of sufficient legal provocation. The trial court refused to charge accident and involuntary manslaughter because it found there was no evidence Smith was acting lawfully. The court of appeals held the trial court erred in failing to give a voluntary manslaughter charge and reversed his convictions. We granted the State's petition for a writ of certiorari.

The law to be charged to the jury is to be determined by the evidence presented at trial. *State v. Lee*, 298 S.C. 362, 364, 380 S.E.2d 834, 835 (1989). If there is any evidence to warrant a jury instruction, a trial court must, upon request, give the instruction. *State v. Shuler*, 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001). A trial court commits reversible error when it fails to give a requested charge on an issue raised by the evidence presented. *Lee*, 298 S.C. at 364, 380 S.E.2d at 835.

## III.

### a. Voluntary Manslaughter

The trial court properly refused Smith's request for a voluntary manslaughter charge. Voluntary manslaughter is the intentional and unlawful killing of a human being in

sudden heat of passion upon sufficient legal provocation. *State v. Pittman*, 373 S.C. 527, 572, 647 S.E.2d 144, 167 (2007). The sudden heat of passion, upon sufficient legal provocation, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence. *Id.* at 572, 647 S.E.2d at 167. In determining whether the act which caused death was impelled by heat of passion or by malice, all the surrounding circumstances and conditions are to be taken into consideration, including previous relations and conditions connected with the tragedy, as well as those existing at the time of the killing. *State v. Norris*, 253 S.C. 31, 35 168 S.E.2d 564, 566 (1969); *State v. Gardner*, 219 S.C. 97, 105, 64 S.E.2d 130, 134 (1951). "To warrant the court in eliminating the offense of manslaughter it should clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." *Pittman*, 373 S.C. at 572, 647 S.E.2d at 168.

We recognize an overt, threatening act or physical encounter *may* constitute sufficient legal provocation. *See id.* at 573, 647 S.E.2d at 168, (citing *Gardner*, 219 S.C. at 105, 64 S.E.2d at 134) (observing that "[t]his Court has previously held that an overt, threatening act or a physical encounter may constitute sufficient legal provocation."). While Smith's assertion of legal provocation is dubious at best, the record is devoid of any evidence of heat of passion.

For a defendant to be entitled to a voluntary manslaughter charge, there must be evidence of both sufficient legal provocation and heat of passion at the time of the killing. *See State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 513 (2000) ("Both heat of passion and sufficient legal provocation must be present at the time of the killing."). According to Smith, he was not enraged, incapable of "cool reflection," or acting "under an uncontrollable impulse to do violence." Because of the absence of any evidence of heat of passion, the trial court properly declined the voluntary manslaughter charge.[2] We reverse the court of appeals on this issue.

2. The trial court correctly observed that there was no evidence of self-defense, observing, "I just don't see how in the world that the evidence

### b. Involuntary Manslaughter

 Involuntary manslaughter is: (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others. *State v. Cabrera–Pena,* 361 S.C. 372, 380–81, 605 S.E.2d 522, 526 (2004).

Smith contends he was entitled to a charge under the second definition of involuntary manslaughter because the evidence would support a finding that he was lawfully armed in self-defense at the time the fatal shot occurred. We find no such evidence.

Smith entered the trailer to sell crack cocaine, a felony, to Victim. Smith pursued the drug deal while armed with a loaded gun, knowing Victim owed him $40 from a previous drug transaction. During the confrontation, Smith brandished the gun and used it to pistol-whip Victim. According to Smith, he pistol-whipped Victim because Victim was approaching him in a "real serious demeanor." Victim was unarmed, the door to Victim's trailer was unlocked, and there is no evidence Smith was unable to retreat from the dangerous situation he created. Based on these facts, we find no evidence to support Smith's assertion that he was acting lawfully by arming himself in self-defense. Specifically, there is no evidence to suggest that Smith was without fault in bringing on the difficulty, that he believed or actually was in imminent danger of losing his life or sustaining serious bodily injury, or that he "had no other probable means of avoiding the danger" other than drawing the loaded weapon. Accordingly, the trial court properly refused the involuntary manslaughter instruction.

---

can be construed that [Smith] was without fault in bringing on the difficulty, and how he was in imminent danger of losing his life or sustaining serious bodily injury." It is not entirely clear why self-defense was charged. It appears that the State focused its objections to the requests for charges on voluntary manslaughter, involuntary manslaughter and accident.

#### c. Accident

For a homicide to be excusable on the ground of accident, it must be shown the killing was unintentional, the defendant was acting lawfully, and due care was exercised in the handling of the weapon. *State v. Burriss*, 334 S.C. 256, 259, 513 S.E.2d 104, 106 (1999). Because Smith was acting unlawfully, he was not entitled to an accident charge.[3]

### IV.

We reverse the court of appeals' determination that Smith was entitled to a voluntary manslaughter charge. We further hold Smith was entitled to neither an involuntary manslaughter charge nor an accident charge. In reversing the court of appeals, we reinstate Smith's convictions and sentence.

**REVERSED.**

TOAL, C.J., PLEICONES, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur.

---

3. Moreover, there is no evidence Smith exercised due care in the handling of the gun. *See State v. Crosby*, 355 S.C. 47, 51 n. 2, 584 S.E.2d 110, 112 n. 2 (2003) ("To satisfy the legal defense of accident, it must be shown that the defendant used due care in the handling of the weapon.").