**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Sincere J. Owens, Petitioner,

v.

The State of South Carolina, Respondent.

Appellate Case No. 2020-000560

———————

Appeal From Colleton County
William H. Seals, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-019
Submitted December 2, 2024 – Filed January 23, 2025

———————

**AFFIRMED**

———————

Jared Sullivan Newman, of Jared S. Newman, P.A., of
Port Royal, for Petitioner.

Attorney General Alan Wilson, Deputy Attorney General
Donald J. Zelenka, and Assistant Attorney General
Danielle Dixon, all of Columbia, for Respondent.

———————

**PER CURIAM:** Sincere J. Owens (Petitioner) argues the post-conviction relief (PCR) court erred in not finding trial counsel ineffective for failing to object to the

voluntary manslaughter instruction because there was no evidence of "sufficient legal provocation" or "sudden heat of passion."  We affirm.

**FACTS**

On April 22, 2009, Petitioner shot Keith Williams (Decedent) in the buttocks, causing him to bleed to death.  At trial, Shante Glover, Petitioner's girlfriend at the time, testified that she had children with both Petitioner and Decedent.  She explained that Petitioner and Decedent had "issues" with each other.  Glover testified that, on the day of the shooting, Decedent became angry after witnessing Petitioner drop Glover off at work.  Decedent confronted Glover at work about what he saw and made a comment about how someone needed to pick up her children.  Based on the argument, Glover asked Petitioner to pick up her children from her grandmother's home, which was located near Decedent's home on Francis Street.  Glover also testified Decedent was upset about her rekindled relationship with Petitioner and previously threatened to "F" Petitioner up when he saw him.  Glover testified she owned a black 1995 Blazer that Petitioner drove on the day of the shooting.  Glover stated she kept a gun in the Blazer because she worked late hours.

At trial, the State introduced Petitioner's written statement wherein he asserted that when he arrived to pick up his child, he learned the children were still at daycare.  Petitioner claimed he began walking back to the Blazer when he heard someone say "Look."  Next, Petitioner claims Decedent walked toward him, pulled out a gun, and instructed him to run.   Petitioner stated he ran away and began shooting but "didn't know where [he] was shooting at."

Mark McCune, who witnessed the shooting, testified Decedent had just arrived home when Petitioner pulled up to Glover's grandmother's home.  McCune testified Decedent began asking Petitioner, "Oh, so you got a gun? You got a gun?" and then began walking off when Petitioner fired three times at the ground.  Although McCune repeatedly testified Petitioner only shot at the ground, he acknowledged that he initially did not make that statement to law enforcement.

Responding paramedics and two additional neighbors testified to viewing the scene and noted Decedent did not have a gun on or near his person.

During closing arguments, Petitioner's counsel argued, "He didn't intend for anybody to be hurt.  If you believe that he went there looking for problems, then he probably – you look at that sudden heat of passion . . . that's voluntary manslaughter, but he didn't go there looking for anything."  At the close of the

trial, the court instructed the jury on, *inter alia*, murder, voluntary manslaughter, and self-defense. The jury acquitted Petitioner of murder but found him guilty of the lesser-included offense of voluntary manslaughter as well as possession of a weapon during a violent crime. The trial court sentenced Petitioner to twenty-seven years' imprisonment for voluntary manslaughter and five years' imprisonment for possession of a weapon during a violent crime, to be served consecutively. Petitioner filed a direct appeal, which this court dismissed and relieved counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967). *State v. Owens*, Op. No. 2014-UP-374 (S.C. Ct. App filed Nov. 5, 2014). Petitioner subsequently filed an application for PCR.

At his PCR hearing, Petitioner confirmed he did not intentionally shoot Decedent and only shot at the ground to keep him away. Trial counsel testified he did not object to the voluntary manslaughter charge because he believed there was evidence to support that charge and self-defense was not a probable outcome. Trial counsel based his belief that self-defense was not a viable claim on the fact Decedent was shot from behind, thus eliminating the possibility of self-defense. When asked about whether Petitioner's behavior may have been viewed as recklessness, trial counsel admitted it may have been a reckless act; thus he "probably should have asked for a [c]harge on involuntary manslaughter." Petitioner's application for PCR was denied.

Petitioner petitioned this court for certiorari as to three questions. This court granted certiorari on the issue of ineffective assistance of counsel based on trial counsel's failure to object to the voluntary manslaughter jury instruction.

**STANDARD OF REVIEW**

PCR applicants have the burden of proving their allegations by a preponderance of the evidence. *Tappeiner v. State*, 416 S.C. 239, 248, 785 S.E.2d 471, 476 (2016) (citing *Frasier v. State*, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002)). "[T]his [c]ourt will uphold the PCR court's factual findings if there is any evidence of probative value in the record to support them." *Thompson v. State*, 423 S.C. 235, 239, 814 S.E.2d 487, 489 (2018), *reh'g denied*, (June 12, 2018). This court reviews questions of law de novo and will reverse if the PCR court's decision is controlled by an error of law. *Smalls v. State*, 422 S.C. 174, 180–81, 810 S.E.2d 836, 839 (2018), *reh'g denied*, (March 29, 2018) (citing *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016).

**LAW/ANALYSIS**

Petitioner argues the PCR court erred in not finding trial counsel ineffective for failing to object to the voluntary manslaughter instruction because there was no evidence of "sufficient legal provocation" or "sudden heat of passion." Petitioner argues, based on the facts and controlling South Carolina case law, "the facts of this case presents a clear proposition: murder or nothing." We disagree.

When reviewing a claim for ineffective assistance of counsel, the "court proceeds from the rebuttable presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Smith v. State*, 386 S.C. 562, 567, 689 S.E.2d 629, 632 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To rebut this presumption and succeed on an ineffective assistance claim, a PCR applicant must show (1) trial counsel's performance was deficient, and (2) trial counsel's deficient performance prejudiced the outcome of the trial. *Strickland*, 466 U.S. at 687. "To prove trial counsel's performance was deficient, a[ ] [PCR] applicant must show '[trial] counsel's representation fell below an objective standard of reasonableness.'" *Smalls*, 422 S.C. at 181, 810 S.E.2d at 840 (quoting *Williams v. State*, 363 S.C. 341, 343, 611 S.E.2d 232, 233 (2005)). Thus, this court will find trial counsel's failure to object was deficient performance only if it was unreasonable under the prevailing professional norms at the time of trial. *Strickland*, 466 U.S. at 688.

"The law to be charged must be determined from the evidence presented at trial." *State v. Knoten*, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001) (citing *State v. Cole*, 338 S.C. 97, 525 S.E.2d 511 (2000)). "Voluntary manslaughter is the intentional and unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Smith*, 391 S.C. 408, 412-13, 706 S.E.2d 12, 14 (2011). "For a defendant to be entitled to a voluntary manslaughter charge, there must be evidence of both sufficient legal provocation and heat of passion at the time of the killing." *Id.* at 413, 706 S.E.2d at 15. "[A]n overt, threatening act or physical encounter may constitute sufficient legal provocation." *Id.* A person's fear immediately following an attack or threatening act may cause the person to act in a sudden heat of passion. *State v. Starnes*, 388 S.C. 590, 598, 698 S.E.2d 604, 609 (2010). "Succinctly stated, to warrant a voluntary manslaughter charge, the defendant's fear must manifest itself in an uncontrollable impulse to do violence." *Id.* at 598-99, 698 S.E.2d at 609.

"Whether a voluntary manslaughter charge is warranted turns on the facts. If the facts disclose any basis for the charge, the charge must be given." *Id.* at 597, 698

S.E.2d at 608. "To warrant the court eliminating the charge of manslaughter, there must be no evidence whatsoever tending to reduce the crime from murder to manslaughter." *Id.* at 596, 698 S.E.2d at 608. "The trial court is required to charge a jury on a lesser-included offense if there is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed." *Suber v. State*, 371 S.C. 554, 559, 640 S.E.2d 884, 886 (2007).

> Voluntary manslaughter is a lesser offense of murder not by virtue of the elements test, but because it has traditionally been considered a lesser offense of murder. Therefore, a trial court must allow the jury to consider the lesser offense of voluntary manslaughter if there is evidence from which it could be inferred that a defendant committed voluntary manslaughter rather than the greater offense of murder.

*State v. Burdette*, 427 S.C. 490, 497, 832 S.E.2d 575, 579 (2019).

This court recently addressed trial counsel's performance when he failed to object to a voluntary manslaughter charge in *Leggette v. State*, 440 S.C. 590, 892 S.E.2d 153 (Ct. App. 2023), *reh'g denied* (Sept. 21, 2023), *cert. denied* (Aug. 13, 2024). In *Leggette*, the State presented evidence showing the petitioner and the decedent were in the same nightclub on the night of the incident, they were from rival neighborhoods, and the petitioner followed the decedent before firing his gun. 440 S.C. 590, 594-95, 892 S.E.2d 153, 156. The State also presented evidence about prior altercations between the two parties and their rival neighborhoods. *Id.* Evidence presented at trial recounted the events leading up to the shooting and described tense arguments between the rivals. *Id.* The petitioner in *Leggette* testified he heard someone come up behind him and ask "What's up now?" He then turned around, saw the decedent reach towards his waist – presumably to retrieve a gun, so the petitioner pulled out a gun and shot. *Id.* at 597, 892 S.E.2d at 157. This court found:

> In light of the prior troubles between Petitioner and the westside group and the menacing actions of the various westside men on the night of the shooting, we find evidence exists to support the PCR court's finding that trial counsel was not deficient in failing to object to the voluntary manslaughter instruction as a lesser-included offense.

*Id.* at 604, 892 S.E.2d at 161.

Here, we believe there is evidence in the record tending to show Appellant acted in a sudden heat of passion upon sufficient legal provocation. Multiple witnesses testified to tense relations between Decedent and Petitioner. Glover testified Decedent "had an attitude" and previously threatened to "F" Petitioner up. Petitioner testified that Decedent pulled out a gun and instructed him to run. We find this overt act, coupled with witness testimony establishing the tense relationship between Petitioner and Decedent and Decedent's previous threats to "F" Petitioner up are sufficient to support a finding of legal provocation. *See State v. Hernandez*, 386 S.C. 655, 661, 690 S.E.2d 582, 585 (Ct. App. 2010) (finding sufficient legal provocation must include more than "mere words" or a display of a willingness to fight without an overt, threatening act). Here, we find the overt act was Petitioner's testimony that Decedent pulled out a gun and instructed Petitioner to run.

As to heat of passion, Petitioner testified that after he saw Decedent pull out a gun and tell him to run, he began running and firing his own weapon in response. We find Petitioner was acting in the heat of passion based upon sufficient legal provocation. *See State v. Sams*, 410 S.C. 303, 309, 764 S.E.2d 511, 514 (2014) (finding sudden heat of passion "need not dethrone reason entirely or shut out knowledge and volition"; however, sudden heat of passion "must be such as would naturally disturb the sway of reason and render the mind of an ordinary person incapable of cool reflection and produce what may be called an uncontrollable impulse to do violence"). Petitioner testified that he was not thinking in the moment when he began running, he was just shooting his gun. Petitioner attempts to refute a finding of "sudden heat of passion" by arguing if Petitioner went to the home looking for problems, such evidence would constitute malice – lending itself to a charge of murder. However, witness testimony established Petitioner went to the home on Francis Street for the sole purpose of picking up his child, something he had done many times in the past. The interaction with Decedent was not pre-planned and it was only set into motion as Petitioner was returning to his car upon being informed the children were still at daycare. *See Smith*, 391 S.C. at 413, 706 S.E.2d at 15 ("In determining whether the act which caused death was impelled by heat of passion or by malice, all the surrounding circumstances and conditions are to be taken into consideration, including previous relations and conditions connected with the tragedy, as well as those existing at the time of the killing.").

Because we find there was evidence to support the charge of voluntary manslaughter, we believe counsel's decision not to object was reasonable under

prevailing professional norms.  At the PCR hearing, trial counsel admitted he believed this case presented evidence supporting a charge of voluntary manslaughter.  Further, at the PCR hearing, trial counsel articulated a valid, strategic reason for not objecting.  Trial counsel testified he did not object to the voluntary manslaughter charge because he believed self-defense was not a viable outcome.  Trial counsel based his belief on the fact Decedent was shot from behind – presumably while running from Petitioner – thus eliminating the possibility of self-defense.

We find trial counsel's performance was not deficient because evidence in the record supports his belief that self-defense was not a viable claim and the voluntary manslaughter charge was proper.  The jury was instructed on both murder and voluntary manslaughter, and based on its view of the evidence, it chose to acquit Petitioner of the charge of murder.  Accordingly, we find trial counsel was not deficient in failing to object to the lesser-included charge.  *See Strickland,* 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

Based on the foregoing, the finding of the PCR court is

**AFFIRMED.**[1]

**THOMAS, HEWITT, and VINSON, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.